UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| Paul Goldman<br>P.O. Box 17033<br>Richmond, Virginia 23226<br>*Pro se*<br><br>      Plaintiff,<br>v.<br>Ralph Northam, Governor of Virginia, in his official capacity<br><br>Virginia State Board of Elections<br><br>Robert Brink, Chairman of the State Board of Elections, in his official capacity<br><br>John O'Bannon, Vice Chair of the State Board of Elections, in his official capacity<br><br>Jamilah D. LeCruise, Secretary of the State Board of Elections, in her official capacity<br><br>Christopher Piper, Commissioner of the State Board of Elections, in his official capacity<br>      Defendants. | Case No: 3:21-CV-420<br><br><br>AMENDED COMPLAINT FOR DECLARATORY JUDGMENT |

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Pursuant to Federal Rules of Civil Procedure Rule 15(a), Plaintiff hereby files his Amended Complaint. There is good cause for the Amended Complaint.

Plaintiff was served by mail with Defendant's Motion to Dismiss filed electronically on August 3. Pursuant to Plaintiff's Motion requesting additional time to respond, the Court granted Plaintiff an additional seven days to obtain certain recently released 2020 U. S. Census Bureau data. This Amended Complaint is filed within the time deadlines.

This data was not yet available when Plaintiff filed his initial Complaint. Defendants, on Page 5 of their Memorandum of Law in support of their Motion to Dismiss, averred such Census data was fundamental to fairly resolving the instant matter. This Census data has since become publicly available and is incorporated herein. Therefore, the issues of disagreement between

Plaintiff and Defendants have been significantly narrowed. Defendant Bowman has been dropped.

For these reasons, Plaintiff respectfully asks the Court to docket this Amended Complaint and moot the original Complaint and Defendants' Motion to Dismiss.

## SUMMARY

1. As a result of the Court permitting Plaintiff sufficient time to obtain new U.S. Census data, the key facts, along with the key principles of state and federal constitutional law, are seemingly no longer in dispute.

2. As Plaintiff stated in his original Complaint, the unconstitutional nature of the governmental action being conducted on a continuing basis as regards the upcoming November 2021 House of Delegates general election had been pointed out to Defendants forty years ago in *Cosner v Dalton*, 522 F. Supp. 350 (E.D. Va 1981).

3. As Defendants concede in the Statement of Facts in their Motion to Dismiss, the Constitution of Virginia mandates this election this reapportionment year must be contested in new districts drawn pursuant to the 2020 U.S. Census. Defendant, Memorandum of Law, Page 1.

4. Upon information and belief, no previous House of Delegates election mandated by the Constitution of Virginia in a reapportionment year has ever been held using the old, existing districts created pursuant to an obsolete Census finished eleven years prior.

5. Yet the governmental leaders of the Commonwealth of Virginia are currently in the process of holding the 2021 November general elections for the House of Delegates using the existing old districts created pursuant to the obsolete 2010 U.S. Census. See, e.g., *Washington Post*, 5/24/21: https://www.washingtonpost.com/local/virginia-politics/virginia-elections-ballot-house-races/2021/05/24/da784752-b98a-11eb-a6b1-81296da0339b_story.html.

6. At all times, state leaders knew such a scheme clashed with the plain wording of the Constitution of Virginia. See *Washington Post*, 2/16/21: https://www.washingtonpost.com/local/virginia-politics/census-delays-virginia-elections/2021/02/16/0f4488ac-706f-11eb-b8a9-b9467510f0fe_story.html.

7. Accordingly, it is reasonable to presume Defendants have long been aware of the reasoning, not merely the outcome, in Cosner, *supra,* the leading case in this area.

8. Indeed, the same Article II, Section 6 cited by Defendants in support of their Motion to Dismiss had been amended in 2020 to ensure the Governor and state election officials would abide by the following in a reappointment year such as 2021: "Every electoral district shall be drawn in accordance with... [among other laws] the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States...and **judicial decisions interpreting such laws.**"
http://results.elections.virginia.gov/vaelections/2020%20November%20General/Site/Referendums.html

9. *Cosner* was decided under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. ("Because we conclude that the Act [referencing the reapportionment law passed by the Virginia General Assembly] violates the Equal Protection Clause of the Fourteenth Amendment….") Cosner, *supra*, at 354.

10. That Virginia had been experiencing uneven population growth and/or decline among different regions during the past decade must presumed to have been known by Defendants, the Attorney General, and the General Assembly. See, e.g., "Virginia Population Shifts", *The Virginia Newsletter*, Weldon Cooper Center for Public Service at the University of Virginia, Volume 93, No. 1, January 2017, available at vig.coopercenter.org.

11. Accordingly, it is simply not credible for a Governor, an Attorney General, the leaders of the General Assembly, or the Defendant top state election officials to claim they didn't have reason to know holding the 2021 November elections under the old existing districts would do great damage to Plaintiff's equal protection rights until they had possession of the official U.S. Census data for 2020.

12. "Allowing the [1981] elections to proceed under the 1971 Act [i.e., outdated districts created pursuant to the obsolete 1971 census] would greatly disadvantage the citizens in Virginia's rapidly growing areas and **would effect a great harm to the principle of one person, one vote.**" Cosner, *supra*, at 363. (Emphasis added).

13. At all times, Defendants Northam, Brink, and seemingly Piper had a statutory right to ask the Attorney General for a formal official publicly available legal opinion on the constitutionality of holding the 2021 House of Delegate election under the existing, old districts. Va. Code Section 2.2-505. See also https://www.oag.state.va.us/citizen-resources/opinions/official-opinions.

14. Had said Defendants or any member of the General Assembly merely invoked the command of the statute, the Attorney General had a legal obligation to reply. *Id.*

15. Upon information and belief, no such Defendant asked for an opinion.

16. Given the new language to the state constitution, and the fact it appears no previous general election for the House of Delegates in a reapportionment year has taken place using old districts created pursuant to an old, obsolete census, the failure to seek an official opinion of the Attorney General is seemingly inconsistent with the general "good faith" standard required of state officials in redistricting cases. See, e.g., *Kirkpatrick v. Preisler*, 394 U.S. 526, 530 (1969) ["State (must) make a good faith effort"].

17. *Cosner* was decided on August 25, 1981, more than two months **before** the November 3, 1981, House of Delegate elections at issue.

18. In *Cosner*, the General Assembly had used the new 1980 Census data to enact a new reapportionment plan on August 11, 1981, creating one hundred House of Delegates districts to be contested on November 3, 1981. Cosner, at 353.

19. But *Cosner* found the new reapportionment plan unconstitutional. *Id* at 354.

20. "Having found the August 11 plan unconstitutional, we must consider the question of appropriate relief. Any remedy must, of course, be considered in light of the imminence of the 1981 elections" due to be held in November. Cosner, at 363.

21. "A number of remedies have been suggested" declared the opinion. *Id.*

22. "[T]he court could implement its own plan." *Id.*

23. But the Court rejected implementing its own plan. *Id.*

24. "[W]e could permit the Virginia General Assembly to devise [another] plan of its own." *Id.*

25. The Court also rejected this option. *Id.*

26. "[W]e could order the elections to be reorganized to follow the 1971 district lines." *Id.*

27. The Court rejected using the old districts as population growth had been "unevenly spread throughout the Commonwealth." *Id.* See also paragraph #12, *supra*.

28. *Cosner* found it "impractical" to expect the General Assembly to reconvene and produce a constitutionally acceptable plan in time to "accommodate an election on November 3." *Cosner*, at 364.

29. *Cosner* therefore allowed the 1981 House of Delegates elections to proceed under the unconstitutional (August 11) reapportionment plan created using 1980 census data, saying such interim relief could be permitted "when as here, necessary election machinery is already in progress for an election rapidly approaching." *Id.* (citations omitted)

30. At the same time, the Court found "Virginia citizens are entitled to vote as soon as possible for their representatives under a constitutional apportionment plan." *Id.*

31. Accordingly, the Court limited "the terms of members of the House of Delegates elected in 1981 to one year." *Id.*

32. *Cosner* ordered the Defendant "state election officials to conduct a new election in 1982 for the House of Delegates" under a constitutional reapportionment plan. *Id.*

33. This 1982 special election was held in November 1982 under a constitutional plan enacted by the General Assembly. See *Cosner v Robb, et al.* 541 F. Supp. 613 (E.D. Va. 1982). (Robb had replaced Dalton as Governor; the State Board of Election members remained Defendants).

34. Upon information and belief, no state official ever suggested holding the court-ordered special election in 1982 a year after the 1981 general election put an unfair burden on any legitimate state interest. (Indeed, three consecutive House of Delegates resulted from the *Cosner* decision as all one hundred House of Delegate seats were again contested in 1983 at the regularly scheduled general election). Paragraph # 6, *supra*.

35. Defendants and the Attorney General cannot claim surprise at what Plaintiff has now discovered when overlapping the 2020 Census data with the old existing House districts to be contested this November.

36. The population deviation between these House Districts grossly exceeds the maximum allowed under Supreme Court decisions since the seminal reapportionment case in Virginia, *Mahan v. Howell*, 410 U.S. 315 (1973). (Mahan was the Secretary of the State Board of Elections and Howell, representing himself *pro se*, is now a legendary figure in Virginia politics, but back then a State Senator destined to be elected Lieutenant Governor a few months later) [The current general standard is that deviations of 10% or more are considered constitutionally

questionable and invariably will "not be tolerable" except due to exceptional circumstances. *White v Register*, 412 U.S. 755, 764 (1973)].

37. Virginia House of Delegates District #3 has a population of 71,122, according to the 2020 U.S. Census. (Plaintiff's Exhibit 1) (hereinafter "Exhibit 1").

38. Virginia House of Delegates District #87 has a population of 130,082, according to the 2020 U.S. Census. (Exhibit 1).

39. The population deviation between HD #3 and HD #87 is approximately 82%.

40. This far exceeds the maximum allowable deviation generally permitted for state legislative reapportionments. *See, e.g., Harris, v Arizona Independent Redistricting Commission*, 136 S. Ct. 1301, 1307 (2016).

41. Such an egregious deviation, on the order of 7 to 8 times bigger than considered tolerable as a general constitutional rule, is not unique to a comparison with House District #3. House District #1 has a population of 72,160, House District #4 has a population of 73,740 and House of District #79 a population of 73,909 as compared to the 130,082 residents in HD #87 [roughly 75% or greater for each of the three].

42. A 10% deviation between the most populated and least populated legislative districts would automatically trigger serious constitutional concerns in any contested election in a reapportionment year. *Id*.

43. Yet using, *arguendo*, a 12% deviation marker finds over four-fifths of all 100 House of Delegates Districts to be contested in November with population 12% or greater, a staggeringly unconstitutional deviation pattern. (Exhibit 1).

44. There are approximately thirty House of Delegates Districts with populations at least 25% larger than House District #3.

45. Plaintiff resides in a House District whose population is sufficiently greater than HD#3 to give him the necessary standing to sue using *Harris*, infra, *Cosner* infra, and *Mahan* infra. See paragraphs #55 through #69 *supra*.

46. The U.S. Supreme Court recognized nearly 50 years ago that the Virginia State Board of Elections and its members were proper parties for the instant matter. See e.g., *Mahan*.

47. Governors have long been considered proper parties for challenges to Virginia apportionment laws. See, e.g., *Cosner v. Dalton*, infra, *Cosner v. Robb*, infra and *Republican Party v. Wilder, et al.* 774 F. Supp. 400 (W.D. Va. 1991) [In the latter, Governor Wilder and Michael Brown, Executive Secretary to the Virginia State Board of Elections, were likewise sued in their official capacities].

48. The Virginia state government intends to hold the 2021 House of Delegates elections pursuant to districts created according to the 2010 U.S. Census and signed by Governor Bob McDonnell on April 29, 2011. Chapter 1 of the Acts of Assembly of the 2011 Special Session.

49. Two weeks before, Governor Bob McDonnell vetoed the reapportionment bill passed by the General Assembly in part because it violated the Equal Protection Clause of the 14th Amendment to the U.S. Constitution. Message accompanying Governor's veto of House Bill 5001, lis.virginia.gov (2011 Special Session). [Thus, the Office of Governor's previous intimate involvement with the reapportionment plan at issue 11 years later makes the current occupant

of that office a proper Defendant when sued in his official capacity. *Ex Parte Young*, 209 U.S. 123 (1908)].

50. Finally, even assuming, *arguendo*, Virginia did not receive the U.S. Census data needed to draft new districts in time for the upcoming November 2, 1981 general election for the House of Delegates, this is a distinction without a difference as regards *Cosner*: to wit, the gravamen both in 1981 and now in 2021 is the grossly unconstitutional population deviations between House districts being contested in 1981 and again in 2021 in a reapportionment year, thus both cases are revolve around how best to remedy such unconstitutionality so citizens can enjoy their constitutional right of equal protection of the laws as soon as possible. See paragraphs # 9 thru # 31 *supra*.

## JURISDICTION AND VENUE

51. This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law.

52. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under the Equal Protection Clause of the United States Constitution.

53. Venue is proper in, and Defendants are subject to the personal jurisdiction of, this Court because Defendants are citizens of Virginia, operate in their official capacities in the Eastern District of Virginia, and all or most of the events giving rise to this action occurred in this District.

54. Plaintiff is a resident of Virginia.

## PARTIES

55. Plaintiff Paul Goldman resides in Richmond, Virginia.

56. Goldman is a qualified voter in the 68th Virginia House of Delegates District.

57. Goldman was denied his right to run in a constitutionally drawn 68th district in 2021 and is contemplating using his core political rights guaranteed by the U.S. Constitution to run for the House of Delegates in a constitutionally drawn 68th district (or whatever the number of the district wherein he would reside).

58. The population of House of Delegates District #68 is 85,233, according to 2020 U.S. Census data. Exhibit 1.

59. Plaintiff Goldman's district has a population size over 19% greater than House of Delegates District #3.

60. Defendant Ralph Northam is the Governor of Virginia. He is a resident of Virginia, and his office is in Richmond, Virginia. He is being sued in his official capacity.

61. The Virginia State Board of Elections is headquartered in Richmond, Virginia.

62. Defendant Robert Brink is the Chair of the State Board of Elections. He is a citizen of the Commonwealth of Virginia. His office is in Richmond, Virginia. He is being sued in his official capacity.

63. Defendant John O'Bannon is the Vice Chair of the State Board of Elections. He is a citizen of the Commonwealth of Virginia. His office is in Richmond, Virginia. He is being sued in his official capacity.

64. Defendant Jamilah LeCruise is the Secretary of the State Board of Elections. She is a citizen of the Commonwealth of Virginia. Her office is in Richmond, Virginia. She is being sued in her official capacity.

65. Defendant Christopher Piper is the Commissioner of the Virginia Department of Elections. He is a citizen of the Commonwealth of Virginia. His office is in Richmond, Virginia. He is being sued in his official capacity.

66. The Virginia State Board of Elections (hereinafter, "State Board") is tasked by state law with ensuring "legality and purity in all elections" and to "ensure that major risks to election integrity are…addressed as necessary to promote election uniformity, legality and purity." Va. Code § 24.2 103(A).

67. The Virginia Department of Elections is the operational arm used by the State Board to ensure that the State Board is fulfilling its duty to ensure the integrity, purity, and uniformity of state elections.

## STATEMENT OF FACTS

68. The Commonwealth of Virginia intends to hold the November 2021 House of Delegates elections according to Chapter 1 of the Acts of Assembly of the 2011 Special Session, codified in Va. Code § 24.2-304.3.

69. This state reapportionment law was signed by Governor Bob McDonnell on April 29, 2011. See paragraph # 48, *supra*.

70. It was the General Assembly's second attempt at a constitutional redistricting bill. See paragraph #49, *supra*.

71. Governor McDonnell vetoed the first reapportionment bill passed by the General Assembly pursuant to the 2010 census. Id.

72. The first bill passed the Senate and the House on April 11, 2011. *Id.*

73. Governor McDonnell vetoed it on April 15, 2011. *Id.*

74. In justifying the veto, the Governor gave several reasons, including his concern that part of the proposed reapportionment plan violated the equal protection clause. *Id*.

75. Roughly five years later, several citizens mounted a legal challenge to a dozen of the legislative districts drawn in the plan signed by Governor McDonnell. *Bethune-Hill v. Virginia State Board of Elections*, 137 S. Ct. 786 (2017).

76. The challenge proved successful, and the matter got remanded for further consideration. *Golden Bethune-Hill et al. v. Virginia State Board of Elections, et al. Defendants* (3:14cv852, 2019) [The Virginia State Board of Elections, the Chair, the Vice Chair, and the Secretary, along with the Department of Elections were named defendants, and had representation including a lawyer from the Office of the Attorney General].

77. Adjustments to certain legislative district lines were made as required using the 2010 Census data. *Id.*

78. Article II, Section 6 of the Virginia Constitution requires House of Delegates electoral districts to be redrawn in 2021 using the 2020 census. Paragraph # 3, *supra*.

79. In November 2020, Virginia voters approved Amendments to the Constitution concerning drafting the new apportionment plan required pursuant to the 2020 Census. Paragraph # 8, *supra*.

80. The voters added to the Constitution language stating that new legislative districts comply not only with state mandates but also the "Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States"; the "Voting Rights Act of 1965, as amended"; and "judicial decisions interpreting" these enactments. Article II, section 6 of the Constitution of Virginia. *Id.*

81. The voters also added a new provision creating the Virginia Redistricting Commission. Article II, section 6 A.

82. The Virginia Redistricting Commission (hereinafter "Commission") says the Constitution of Virginia is clear and that "for the House of Delegates the new districts are to be implemented for the general election on November 2, 2021." www.virginiaredistricting.org, Commission News for February 12, 2021.

83. As demonstrated in paragraphs #36 through #45, *supra*, the statistical proof as regards the unconstitutionality of the election plan to be used this coming November 2, 2021, is irrefutable.

84. Such irrefutability can be reasonably assumed to have been common knowledge to state government leaders including Defendants long before this lawsuit was filed, and of course, on or before House District population data was available from the Commission. See paragraphs #6 and #12, *supra*, and the emails in Exhibit 1.

## THE LAW OF THE CASE

85. Since *Reynolds v. Sims,* 377 U.S. 533, 568 (1964), the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution applies to state legislative redistricting.

86. The Constitution of Virginia explicitly affirms that the Equal Protection Clause as well as the Voting Rights Act of 1965 applies to state legislative redistricting plans, as do judicial decisions like *Cosner*. See paragraphs #8 and #9, supra.

87. The Census data available to both Plaintiff and Defendants irrefutably demonstrates the unconstitutionality of holding the November 2021 House of Delegates general elections under the old districts. Exhibit 1.

88. Plaintiff Goldman's standing is irrefutable, as he resides in a House of Delegates district whose population is over 19% greater than House District #3.

89. Moreover, any deviation from equally populated districts greater than 10% is only constitutional if state officials can demonstrate "an honest and good faith effort" to have tried

to avoid any such deviation among the districts, the burden of proof being on the state. See, *Harris* at 1306.

90. Given that Defendants never sought any guidance from any Court, nor guidance from the Attorney General as permitted in Va. Code Section 2.2-505, and that state leaders likewise failed to seek any such guidance before deciding to conduct the House of Delegates election under old, existing districts drawn to an obsolete census from 11 years ago, this raises a fair inference that Defendants failed to make an "honest and good faith effort" to discharge their duties in a reapportionment year. *Reynolds*, *supra*.

91. Indeed, nearly fifty years ago, in *Mahan v. Howell,* 410 U.S. 315 (1973), involving 1971 Virginia House of Delegates redistricting, the Court found Virginia state officials had to make a good faith effort in a reapportionment year to adhere to their responsibilities under the Equal Protection Clause. Id at 324.

92. Given the respective deviations in population size affecting Plaintiff, he has demonstrated the injury in fact required to pursue the instant matter. See, e.g., Cosner, Mahan, *supra*.

93. The November 1981 general elections for the House of Delegates at issue in *Cosner* had not yet occurred.

94. *Cosner* ruled that an injury to Plaintiffs had already occurred since the Commonwealth intended to conduct the upcoming election under an unconstitutional plan. These are precisely the circumstances in the instant matter. See paragraph #97, *infra*.

95. *Cosner* and *Mahan* therefore refute Defendants' claim in their Motion to Dismiss that no such particularized injury can legally occur until the November elections have been held. Defendants, Motion to Dismiss, Page 5.

96. The constitutionally required injury occurs the moment the state decides to hold an election under an unconstitutional electoral plan. *Cosner*, *Mahan*.

97. As *Cosner* pointed out, "[a]llowing elections **to proceed** under the 1971 Act would…effect great harm to the principle of one person, one vote." *Id* at 363. (Emphasis added).

98. Defendants apparently intend to claim that, unlike *Cosner*, the state had to use the old districts, as the necessary Census data to make new districts in time for the 2021 was never expected to be available.

99. Even assuming, *arguendo,* this to be true, this claim is irrelevant to the instant matter, as *Cosner* and *Mahan* make clear.

100. The deciding constitutional principle is that the districts being contested in the upcoming November 2021 general election are unconstitutional.

101. Any alleged lack of Census data, while it may explain the failure of state officials to abide by the state and federal constitutions, cannot obliterate the Equal Protection Clause rights of the plaintiff, much less the citizenry of Virginia, to have a constitutionally reapportioned state legislature as soon as possible. Paragraph #30, *supra*.

102. *Cosner* found that the Governor and the State Board of Elections were proper parties to the suit.

103. Governor Robb, who succeeded Governor Dalton, was substituted in a later redistricting suit related to that matter and the State Board of Elections Chair, along with others, remained a Defendant. *Cosner v. Robb*, 541 F. Supp. 613, 619 fn. 2 (E.D. Va. 1982).

104. In 1991, the Republican Party of Virginia, along with many Republican members of the House of Delegates, sued then-Governor Wilder and State Board of Elections Executive Director Michael Brown challenging the reapportionment plan enacted according to the 1990 Census by the Virginia General Assembly and signed by Governor Wilder on April 19, 1991. *Republican Party of Virginia v. Wilder*, 744 Fed. Supp 400, 408 Fn. 2 (W.D. Va. 1991).

105. Plaintiffs sought a preliminary injunction. *Id* at 401.

106. The Court denied the injunction as it failed to meet the requirements *of Rum Creek Coal Sales, Inc. v. Caperton,* 926 F.2d 353 (4th Cir. 1991).

107. "We do not believe that a redistricting plan, which has been entrusted to the Commonwealth, by law, and especially to the General Assembly and the Governor thereof..." met the conditions for injunctive relief. *Republican Party of Virginia v. Wilder*, at 407.

108. The Supreme Court, in *Mahan*, recognized the Virginia State Board of Elections as a proper party in a redistricting case.

109. Therefore, with all due respect, Defendant's Motion to Dismiss claiming ***none*** of the Defendants are proper parties is not well grounded in the law. Motion to Dismiss, Memorandum, pp. 9-10.

110. The 2011 legislation creating most of the districts being contested in 2021 took effect after the General Assembly negotiated away the Governor's objections. Paragraphs #68 through #77, *supra*.

111. Accordingly, *Ex Parte Young*, 208 U.S. 123 (1908) is fully satisfied as regards all Defendants.

112. Plaintiff believes sovereign immunity, to the extent it might otherwise generally apply in cases involving state legislative reapportionment, has been waived by the voters when they approved substantive changes to Article II, Section 6 in 2020. Paragraph #8, *supra*.

113. Virginians wanted to make sure state officials would be held to the highest constitutional redistricting standards in their conduct as articulated in federal law and judicial decisions.

114. Virginia voters are empowered to make such decisions, since under the Constitution of Virginia, "all power is vested in, and consequently derived from, the people, that magistrates are their trustees and servants, and at all times amendable to them." Article I, Section 2.

## NATURE OF THE ACTION REQUESTED IN THIS CASE

115. State officials are plowing ahead, for apparently the first in Virginia history, to hold House of Delegates elections in a reapportionment year pursuant to old House of Delegates districts created according to an old, obsolete U.S. Census.

116. This state action is irrefutably unconstitutional. See, e.g., Cosner, *supra*.

117. Plaintiff has standing to bring this instant matter as he has shown the necessary particularized injury to his constitutional rights from this governmental action.

118. But to avoid any unnecessary embarrassment to the Defendants along with other state officials, Plaintiff is limiting his inquiry to the election issue addressed and decided by *Cosner*: to wit, will those elected to the House of Delegates this November be elected to serve for only a one-year term, or will they be elected to the normal two-year term expiring in 2024?

119. If the unconstitutional nature of the 2021 House of Delegates election is not cured until the start of the 2024 General Assembly, when those elected in 2023 under a presumably constitutional reapportionment plan are sworn in, this will mark the first time in Virginia history, and seemingly American history, that it took so long to finally seat a state legislature in which all the members were elected according to a constitutional reapportionment plan based on the latest U.S. Census.

120. Plaintiffs believe citizens have a right to know the length of the term for those being elected to the House of Delegates this 2021 as soon as possible.

## COUNT ONE: VIOLATION OF THE U.S. CONSTITUTION

121. For purposes of efficiency, Plaintiff incorporates by reference paragraphs 1 through 120, *supra*.

122. The failure to adopt required reapportionment violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

123. The state's plan to hold the upcoming general elections for members of the House of Delegates using the existing, old state legislative districts violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

124. Since *Reynolds*, the U.S. Supreme Court has made clear Plaintiff has a constitutional right to have his vote counted equally through his representatives elected to the General Assembly as the principle of equal legislative body representation as regards the population of legislative districts is a "fundamental goal" of our system of laws. *Wesberry v. Sanders*, 376 U.S. (1964).

125. Plaintiff has a right to expect that state officials will ensure legislators elected to the House of Delegates represent districts having the constitutionally required equally weighted populations within permitted deviations as soon as possible. Cosner, *supra*.

126. Plaintiff has the required standing to bring this action.

127. Defendants are proper parties.

128. According to *Cosner,* Plaintiff's protected core First Amendment rights should allow him to run for the House of Delegates in 2022, should he so choose, instead of being forced to wait until 2023 due to the failure of the appropriate state authorities to adhere to the requirements of the federal constitutions.

129. The decision of the Governor and the top state election officials to not seek guidance as to the constitutionality of the upcoming House of Delegates general election despite Va. Code

Section 2.2-505 raises the inference that such Defendants have not operated with the "good faith" generally required in redistricting law. See, e.g., *Harris, Mahan, White, supra*.

130. This failure along with the other governmental conduct at issue raises the inference that Defendants along with other state officials have put the interest of incumbent legislators ahead of the public's interest, since it is a fair inference to assume incumbents would rather have a two-year term and thus not risk losing their seats in a 2022 primary or special election. [Upon information and belief, no incumbent on the ballot this November exercised his or her right under Va. Code Section 2.2-505 to seek guidance the matter. Upon information and belief, every incumbent is running on a platform telling voters their vote will give them the normal two-year term expiring in 2024].

131. For these reasons, Plaintiff believes the *Cosner* rationale retains the same constitutional common sense today as it did 40 years ago, thus compelling, as a matter of equal protection of the laws, that those elected to the House of Delegates this November should only serve a one-year term.

132. Therefore, Plaintiff's rights guaranteed under the U.S. Constitution are being violated, inflicting significant harm to his right to equal protection of the law.

133. Defendants, being the Governor and his top state election official appointees, are therefore subject to federal court order to ensure Plaintiff's constitutional rights are not so violated, as was done in *Cosner*.

134. Plaintiff asks that the Court award such relief as it deems justified, including costs and attorney fees, where appropriate.

## COUNT TWO: VIOLATION OF THE CONSTITUTION OF VIRGINIA

135. For purposes of efficiency, Plaintiff incorporates by reference paragraphs 1 through 134, *supra*.

136. The failure to adopt – indeed, even attempt to adopt – the required redistricting plan violates Article II, Section 6, and 6-A of the Constitution of Virginia.

137. The state's plan to hold the upcoming general elections for members of the House of Delegates using the existing state legislative districts created due to the 2011 Census violates Article II, Section 6, and 6-A of the Constitution of Virginia.

138. Since *Reynolds, supra*, the U.S. Supreme Court has made clear Plaintiff's constitutional right to have his vote counted equally and equally represented in the state legislature.

139. The failure of state officials to even seek guidance from state officials as to whether they are conducting an election in violation of the Equal Protection Clause was anticipated by voters in the Constitutional Amendment referendum adopted in November 2020.

140. The new language added by Virginians to the state constitution amounts to a waiver of sovereign immunity in redistricting matters, the power to make such an exception given to the people by Article I, Section 2 of the Constitution of Virginia.

141. Thus, Plaintiff's right under the Constitution of Virginia to be equally represented in the House of Delegates is being violated.

142. Plaintiff therefore asks the Court to ensure that Defendants take such action as necessary to protect said right from further injury from state action.

143. Plaintiff asks the Court to award such relief as seems justified, including costs and attorney's fees were justified.

## REMEDY

For the reasons stated above, based upon fact and law, comes now the Plaintiff asking this Honorable Court for the following relief:

(A) For good cause shown, including but not limited to the recent release of 2020 U.S. Census data, as well as F.R.Cv.P. 15(a), docket this Amended Complaint and moot the Original Complaint and Defendants' Motion to Dismiss.
(B) Declare the Commonwealth of Virginia, and the Defendants herein expected to protect the integrity of our election process, to be in violation of the Constitution of the United States, such Constitution requiring the upcoming November 2, 2021, general election for the House of Delegates be held under a constitutionally valid reapportionment plan created pursuant to the 2020 Census data.
(C) Declare the Commonwealth of Virginia, and the Defendants herein expected to protect the integrity of our election process, to be in violation of the Constitution of Virginia, such Constitution requiring the upcoming November 2, 2021, general election for the House of Delegates be held under a constitutionally valid reapportionment plan created pursuant to the 2020 Census data. he
(D) Declare that those elected to the House of Delegates on November 3, 2021, shall only be elected to one-year terms, such terms to expire one year after they officially begin.
(E) Order the Defendants to ensure that the Commonwealth of Virginia hold new elections for the House of Delegates on the date of the November 2022 general elections under a constitutionally crafted reapportionment plan consistent with the 2020 U.S. Census.
(F) Such other relief as the Court deems required, including reimbursement of costs, attorney fees and other measures where appropriate.

Respectfully submitted by:

Paul Goldman
P.O. Box 17033
Richmond, Virginia 23226
804 833 6313
Goldmanusa@aol.com
*Pro se*

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on September 2̶ PG 2021, I mailed this Amended Complaint for Declaratory Judgement to the Clerk of the Court in paper form via U.S. mail. A true copy of said complaint was also sent, via first class mail, to:

Calvin Brown
Carol Lewis
Brittany A. McGill
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219

_____

Paul Goldman
P.O. Box 17033
Richmond, Virginia 23226
804-833-6313
Goldmanusa@aol.com
*Pro se*