IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

PAUL GOLDMAN,
    *Pro se* Plaintiff,

    v.                                  Civil No. 3:21-cv-420 (DJN)

RALPH NORTHAM, *et al.*,
    Defendants.

## MEMORANDUM OPINION
### (Granting in Part and Denying in Part Defendants' Motion to Dismiss)

*Pro se* Plaintiff Paul Goldman ("Plaintiff") brings this action against Defendants Ralph Northam ("Governor Northam"), the Virginia State Board of Elections ("the Board"), Robert Brink ("Brink"), John O'Bannon ("O'Bannon"), Jamilah D. LeCruise ("LeCruise") and Christopher Piper ("Piper") (collectively, "Defendants"), alleging violations of Article II, §§ 6 and 6-A of the Constitution of Virginia and of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. This matter now comes before the Court on Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 23). For the reasons set forth below, the Court hereby GRANTS IN PART and DENIES IN PART the Motion to Dismiss.[1]

---

[1]    This Memorandum Opinion addresses Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 23), which raises only sovereign immunity arguments. Defendants raised standing in their First Motion to Dismiss. (1st Mot. to Dismiss (ECF No. 12); Mem. in Supp. of Defs.' Mot. to Dismiss at 4-8 ("Defs.' 1st Mem.") (ECF No. 13).) However, Defendants did not bring a standing challenge in their Motion to Dismiss the Second Amended Complaint. (2d Mot. to Dismiss (ECF No. 23); Defs.' Mem. in Supp. of Their Mot. to Dismiss 2d Am. Compl. ("Defs.' 2d Mem.") (ECF No. 24).) Nor did they reply to Plaintiff's Response (ECF No. 27) to their renewed Motion to Dismiss. The Court has a responsibility to consider standing *sua sponte*, because the issue affects the Court's subject matter jurisdiction. *See Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020) (stating that the court must assure a plaintiff has standing on its own initiative. For that reason, the Court ordered Defendants to file a

## I.      BACKGROUND

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the

court's jurisdiction over the subject matter of the complaint.  A defendant moving for dismissal

for lack of subject matter jurisdiction may either attack the complaint on its face, asserting that

the complaint "fails to allege facts upon which subject matter jurisdiction can be based," or, as

here, may attack "the existence of subject matter jurisdiction in fact, quite apart from any

pleadings." *White v. CMA Const. Co., Inc.*, 947 F. Supp. 231, 233 (E.D. Va. 1996) (internal

citations omitted).  When deciding a Rule 12(b)(1) motion to dismiss, a federal court may

resolve factual questions to determine whether it has subject matter jurisdiction.  *Thigpen v.*

*United States*, 800 F.2d 393, 396 (4th Cir.1986), *overruled on other grounds*, *Sheridan v. United*

*States*, 487 U.S. 392 (1988).

As explained below, the parties dispute whether Defendants have the power to set an

election or establish legislative district lines.  The resolution of that dispute determines whether

Plaintiff has named the correct defendants in the Second Amended Complaint.  As such, the

Court accepts the factual allegations of the Second Amended Complaint as true, except to the

extent that they relate to Defendants with regard to these responsibilities.

---

pleading on, among other issues, whether Defendants believe that Plaintiff has standing to bring
the instant action. (Order, Oct. 8, 2021 (ECF No. 32).)  In their pleading in response to this
issue, Defendants stated that they do not believe that Plaintiff has standing, because he has not
alleged a specific intent to run for office or an intent to vote in the upcoming elections. (Defs.'
Resp. to Oct. 8, 2021 Order at 3-4 (ECF No. 38).)  Defendants also posit that without new
district plans based on the 2020 U.S. Census data to compare to the current maps from 2011,
Plaintiff cannot show that he has suffered a constitutionally cognizable harm due to his status as
a voter in House of Delegates District 68. (Defs.' Resp. to Oct. 8, 2021 Order at 4.)  Thus, in an
accompanying Order, the Court will require both parties to submit supplemental briefing on
standing.

A. **Plaintiff's Complaint**

Article II, §§ 6 and 6-A of the Constitution of Virginia require the Virginia Redistricting Commission ("the Commission") to redraw the electoral districts for the state House of Delegates for the November 2, 2021 election using the population data from the 2020 U.S. Census. (2d Am. Compl. ¶¶ 78, 82.) According to the Commission's website, the new electoral districts for the House of Delegates will come into effect in time for the election. (2d Am. Compl. ¶ 82.) However, the Commonwealth of Virginia allegedly intends to hold the upcoming election using a House of Delegates district apportionment plan enacted during the 2011 Special Legislative Session. (2d Am. Compl. ¶ 68.) The Virginia General Assembly ("the General Assembly") based this plan on the 2010 Census data, and then-Governor Bob McDonnell signed the plan into law in April 2011. (2d Am. Compl. ¶ 69.) The General Assembly adjusted this plan's congressional districts after a legal challenge several years later. (2d Am. Compl. ¶¶ 75-77 (citing *Bethune-Hill v. Va. State Bd. of Elecs.*, 137 S. Ct. 786 (2017).)

*Pro se* Plaintiff Paul Goldman ("Plaintiff") resides in Richmond, Virginia. (2d Am. Compl. ¶ 55.) He alleges that he is a "qualified voter" in House of Delegates District 68, and he "is contemplating . . . run[ing] for the House of Delegates in a constitutionally drawn 68th district (or whatever the district. . . wherein he would reside)." (2d Am. Compl. ¶¶ 57-58.) Plaintiff identifies as defendants Governor Northam, the Board, Brink, O'Bannon, LeCruise and Piper. (2d Am. Compl. at 1.) Plaintiff sues Governor Northam, Brink, O'Bannon, LeCruise and Piper in their official capacities. (2d Am. Compl. at 1.)

Governor Northam serves as the Governor of Virginia. (2d Am. Compl. ¶ 60.) The Board has its headquarters in Virginia and exists to ensure "legality and purity in all elections" and to "ensure that major risks to election integrity are . . . addressed as necessary to promote

3

election uniformity, legality and purity." (2d Am. Compl. ¶ 66 (citing Va. Code. § 24.2-103(A).)

Brink, O'Bannon and LeCruise ("the Board members") serve as the Chair, Vice Chair and

Secretary of the Board, respectively.[2] (2d Am. Compl. ¶¶ 62-64.) Piper serves as the

Commissioner of the Virginia Department of Elections.[3] (2d Am. Compl. ¶ 65.) The Virginia

Department of Elections — which Plaintiff has not named as a defendant — functions as the

Board's "operational arm" and carries out its duties. (2d Am. Compl. ¶ 67.) Governor Northam,

Brink, O'Bannon, LeCruise and Piper have their offices in Richmond, Virginia, and citizenship

in Virginia. (2d Am. Compl. ¶¶ 60, 62-65.)

Plaintiff attached to his Complaint spreadsheets that he received from the Commission

showing the current total population in the state House of Delegates, state Senate and

congressional districts based on the results of the 2020 Census. (2d Am. Compl. Ex. 1. at 1-6.)

According to that data, House of Delegates District 68, where Plaintiff currently resides, has a

population of 85,223 people.[4] (2d Am. Compl. ¶ 58.) This district has a population 19.8% larger

than that of House of Delegates District 3, which has a population of 71,122. (2d Am. Compl.

---

[2]     The Board has five members:  Brink, the Chairman; O'Bannon, the Vice Chair; LeCruise, the Secretary; as well as Donald W. Merricks ("Merricks") and Angela Chiang ("Chiang"), two general Board members. *SBE Board Members*, Va. Dep't of Elecs., https://www.elections.virginia.gov/board/board-members/ (last visited Oct. 4, 2021). Plaintiff does not name Merricks or Chiang as Defendants in the Second Amended Complaint or explain why he has not named them. (2d Am. Compl. at 1.)

[3]     In the caption of his Second Amended Complaint, Plaintiff identifies Piper as the "Commissioner of the State Board of Elections." (2d Am. Compl. at 1.) In his statement of facts, he states that Piper serves as "the Commissioner of the Virginia Department of Elections." (2d Am. Compl. ¶ 65.) The Court will rely on the facts that Plaintiff alleges and refer to Piper as the Commissioner of the Department of Elections.

[4]     Plaintiff states in the Second Amended Complaint that House of Delegates District 68 has a population of 85,233. (2d Am. Compl. ¶ 58.) The data that he attaches to the Second Amended Complaint show that that District has a population of 85,223. (2d Am. Compl. Ex 1 at 4.)

Ex. 1. at 3-4.)  Plaintiff alleges that, because of this deviation, holding the 2021 House of Delegates election using the current electoral maps violates both the state and federal constitutions.  (2d Am. Compl. ¶¶ 121-43.)  In Count One, Plaintiff alleges a violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.[5]  (2d Am. Compl. ¶¶ 121-34.)  In Count Two, Plaintiff alleges a violation of Article II, §§ 6 and 6-A of the Constitution of Virginia.  (2d Am. Compl. ¶¶ 135-43.)

Based on these claims, Plaintiff requests that the Court declare that Defendants violated the Constitution of Virginia by choosing to conduct the 2021 general election using an old legislative district map based on stale Census data, and declare that those who win election to the House of Delegates serve one-year terms.  (2d Am. Compl. at 13.)  Additionally, Plaintiff asks the Court to order Defendants to hold new elections for the House of Delegates on the date of the November 2022 general election using a reapportionment plan based on the 2020 Census data.  (2d Am. Compl. at 13.)  Finally, Plaintiff requests that the Court order any other required relief, including reimbursement of costs, attorney's fees and other appropriate measures.  (2d Am. Compl. at 13.)

## B.    Legal Background

Plaintiff grounds his claim for relief primarily on *Cosner v. Dalton*.  (2d Am. Compl. ¶¶ 2, 9, 17-35 (citing 522 F. Supp. 350 (E.D. Va. 1981).)  That case included several consolidated cases in which counties, organizations and individuals challenged the

---

[5]    In Count One of the Second Amended Complaint, Plaintiff contends that his "protected core First Amendment rights should allow him to run for the House of Delegates in 2022 . . . instead of being forced to wait until 2023 due to the failure of appropriate state authorities to adhere to the requirements of the federal constitutions (*sic*)."  (2d Am. Compl. ¶ 128.)  The Court reads this statement as merely argument that frames Plaintiff's Fourteenth Amendment challenge, and not as a claim of a First Amendment violation.  As such, the Court construes Count One solely as a claim under the Equal Protection Clause.

constitutionality of the House of Delegates reapportionment plan that the Virginia General Assembly enacted in 1981. *Cosner*, 522 F. Supp. at 353. The plaintiffs brought suit against various state election officials, including the Governor of Virginia, the Chairman of the Board and other members of the Board. *Id.* at 350. They argued — among other claims — that the reapportionment plan violated the Equal Protection Clause of the Fourteenth Amendment, "because it [did] not provide for substantial population equality in electoral districts," and Article II, § 6 of the Virginia Constitution, which required districts to "be composed of contiguous and compact territory and . . . give . . . representation in proportion to the population of the district." *Id.* at 353-54. They sought several forms of relief, including a declaration of the reapportionment plan as unconstitutional, an injunction prohibiting the Board from conducting the 1981 House of Delegates elections using that map and an order requiring the Board to conduct the election using the 1971 apportionment act. *Id.* at 354.

A three-judge panel in the United States District Court for the Eastern District of Virginia found that the 1981 reapportionment plan violated the Equal Protection Clause under *Reynolds v. Sims*, which required states to "make an honest and good faith effort to construct districts . . . as nearly of equal population as is practicable." *Id.* at 356 (quoting *Reynolds v. Sims*, 377 U.S. 533, 577 (1964)). While the Supreme Court permitted "some deviation from strict numerical equality," the court reasoned that the deviations between the House of Delegates districts' populations exceeded constitutional limits, and the reasons that the defendants provided for these deviations did not pass constitutional muster. *Id.* at 357-61.

The court considered a myriad of possible solutions to this problem, noting that "[a]ny remedy must . . . be considered in light of the imminence of the 1981 elections." *Id.* at 363. The court issued its decision on August 25, 1981, just a few weeks before the primary election on

September 8, 1981, and the general election on November 3, 1981. *Id.* The court decided not to devise its own reapportionment or have the General Assembly create a new plan before the 1981 elections. *Id.* Rather, it directed the defendants to hold the 1981 elections using the contested maps and gave the General Assembly until February 1982 to craft and implement constitutional maps. *Id.* at 364. If the General Assembly did not complete new, constitutional maps by that deadline, the court would consider drawing its own legislative maps and retained jurisdiction for that purpose. *Id.* The court also limited the terms of those elected to the House of Delegates in 1981 to one year and directed the state election officials to conduct a House of Delegates election in 1982, off the usual cycle, using the General Assembly's new, constitutional maps or the court's plan. *Id.* It specified that those Delegates who won election in 1982 would serve the remainder of the 1982-84 term, subject to the General Assembly extending the term to a full two years. *Id.*

Plaintiff argues that, as in *Cosner*, the current House of Delegates apportionment plan does not comport with constitutional standards under the Equal Protection Clause. (2d Am. Compl. ¶¶ 9-35, 50, 90-114.) For that reason, he posits, the Court should afford him the same relief that the *Cosner* court furnished, namely, limiting the members of the House of Delegates who win election this year to one-year terms and directing Defendants to hold a House of Delegates election in 2022, off the usual cycle. (2d Am. Compl. at 13.)

### D.    Procedural History

In June 2021, Plaintiff filed his original Complaint ("Compl." (ECF No. 1)), alleging violations of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and Article II, §§ 6 and 6-A of the Virginia Constitution. (Compl. ¶¶ 81-99.) Plaintiff named Governor Northam, the Board, the Board members, Piper and Jessica Bowman ("Bowman"),

whom Plaintiff identified as the Deputy Commissioner of the Board, as defendants. (Compl. at 6.) In July 2021, Plaintiff filed his First Amended Complaint. (1st Am. Compl. (ECF No. 3).) On August 3, 2021, Defendants moved to dismiss the First Amended Complaint for lack of jurisdiction and failure to state a claim. (1st Mot. to Dismiss at 4-13.) Defendants also noted that Bowman no longer worked for the government of Virginia. (Defs.' 1st Mem. at 2.)

On September 10, 2021, Plaintiff then filed for leave to amend his complaint a second time, which the Court granted. (Mot. for Leave to File Am. Compl. at 1-2 (ECF No. 16); Order, Sept. 10, 2021 (ECF No. 17).) The Second Amended Complaint became the operative complaint in this action. (Order, Sept. 10, 2021.) Plaintiff dropped Bowman from his Second Amended Complaint, and she was dismissed from the case. (2d Am. Compl. at 2.) Plaintiff also moved for an expedited hearing on the Second Amended Complaint on the same day that he filed for leave to amend his complaint, before Defendants had an opportunity to respond to the Second Amended Complaint. (Pl.'s Mot. for Expedited Hr'g (ECF No. 19).) For that reason, on September 14, 2021, the Court denied Plaintiff's Motion for an Expedited Hearing. (Order, Sept. 10, 2021 (ECF No. 21).)

On September 23, 2021, Defendants moved to dismiss the Second Amended Complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) (Mot. to Dismiss 2d Am. Compl. ("2d Mot. to Dismiss") at 1-2 (ECF No. 23)), asserting that sovereign immunity shielded them from suit (Defs.' 2d Mem. at 5-11).[6] The Court lays out Defendants' contentions in further detail below.

---

[6]     The same day, Joshua Stanfield ("Stanfield") moved to join this case as a plaintiff, alleging the same claims as Plaintiff. (Mot. for Joinder, (ECF No. 22) (stating that Stanfield's claims to relief arose under identical transactions and occurrences as Plaintiff's.) The Court ordered Defendants to respond to Stanfield's Motion for Joinder by September 29, 2021, and ordered Stanfield to reply to Defendants' response to his Motion by October 4, 2021. (Order,

In light of the upcoming House of Delegates election, the Court ordered Plaintiff to respond to Defendants' Motion to Dismiss the Second Amended Complaint by September 29, 2021. (Order, Sept. 24, 2021 (ECF No. 25).) Additionally, the Court ordered Defendants to file their Reply, if any, to Plaintiff's Response to their Motion to Dismiss by October 4, 2021. (Order, Sept. 24, 2021.) On September 30, 2021, Plaintiff responded to the Motion to Dismiss and attached a "Sworn Statement of Facts" to his Response. (Resp. to Defs.' Mot. to Dismiss ("Pl.'s Resp.") (ECF No. 27); Pl.'s Sworn Statement of Facts (ECF No. 27-1).) Defendants did not reply to Plaintiff's Response to their Motion to Dismiss by the Court's deadline, rendering the Motion to Dismiss now ripe for review. [7]

## II.    STANDARD OF REVIEW

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the court's jurisdiction over the subject matter of the complaint. A defendant moving for dismissal

---

Sept. 24, 2021 (ECF No. 25).) On September 29, 2021, Defendants filed their Response to Stanfield's Motion for Joinder. (ECF No. 26.) On October 6, 2021 — two days after the Court's deadline — Stanfield filed a Motion to Intervene and replied to Defendants' Response to his Motion for Joinder (ECF Nos. 22, 23.) The Court later denied both Motions. (ECF Nos. 31-32).)

[7]    Because Defendants did not reply to Plaintiff's Response, the Court ordered Defendants to file a pleading identifying who in the Virginia government has the authority to draw districts. (Order, Oct. 6, 2021 (ECF No. 28).) Shortly thereafter, the Court ordered Defendants to file a pleading explaining whether the Attorney General had received a request for an opinion on the constitutionality of the 2021 election, whether the Attorney General had issued that opinion, and if he had, what the opinion stated. (Order at 2, Oct. 8, 2021 (ECF No. 34).) As discussed above, the October 8, 2021 Order also directed Defendants to explain whether they believed Plaintiff has standing to bring this action. (Order at 3, Oct. 8, 2021.) In response to these Orders, Defendants argued that the General Assembly alone has the authority to set the time, place and manner of general elections. (Defs.' Resp. to Oct. 6, 2021 Order at 2 (ECF No. 36).) Additionally, Defendants asserted that the Attorney General does not publicly comment on pending opinion requests, and that Virginia Code § 2.2-505 does not compel the Attorney General to respond to these requests or require him to follow a particular timeline in responding. (Defs.' Resp. to Oct. 8, 2021 Order ¶ 2.) They also noted that they believe that Plaintiff does not have standing, but they did not move to dismiss the Second Amended Complaint on that ground. (Defs.' Resp. to Oct. 8, 2021 Order ¶ 3.)

for lack of subject matter jurisdiction may either attack the complaint on its face, asserting that the complaint "fails to allege facts upon which subject matter jurisdiction can be based," or, as here, may attack "the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *White v. CMA Const. Co., Inc.*, 947 F. Supp. 231, 233 (E.D. Va. 1996) (internal citations omitted). In either case, the plaintiff bears the burden of proof to establish jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The Court must dismiss an action if it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).[8]

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations

---

[8]     Plaintiff attaches to his Response to the Motion to Dismiss a Sworn Statement of Facts. (ECF No. 27-1.) When a defendant makes a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court will treat the motion like a motion made for failure to state a claim under Rule 12(b)(6) and take only the facts alleged in the complaint as true. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). But when a defendant challenges the factual allegations that a plaintiff makes in support of subject matter jurisdiction, a court can resolve factual disputes to decide whether it has subject matter jurisdiction. *Thigpen*, 800 F.2d at 396. By that token, a court "may consider affidavits, depositions, or live testimony without converting [a Rule 12(b)(1) Motion] into one for summary judgment." *Lewis v. UPS Freight*, 2010 WL 1640270, at *1 (citing *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995)); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). It appears that Defendants raise a factual dispute regarding who in the government of Virginia can provide the relief that Plaintiff seeks. (Defs.' 2d Mem. at 1.) For that reason, only to the extent that the Sworn Statement of Facts responds to Defendants' factual challenge regarding their electoral responsibilities, the Court will take them into consideration. Likewise, the Court will also consider Defendants' pleadings in response to its October 6 and October 8 Orders to the same extent. (Defs.' Resp. to Oct. 6, 2021 Order; Defs.' Resp. to Oct. 8 Order.)

omitted).  Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable."  *Id.* at 555, 570.  Thus, a complaint or counterclaim must assert facts that are more than "merely consistent with" the other party's liability.  *Id.* at 557.  And the facts alleged must be sufficient to "state all the elements of [any] claim[s]."  *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

## III.   ANALYSIS

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  The Supreme Court has interpreted this Amendment to bar private individuals from suing a state in federal court.  *Bd. of Trs. v. Garrett,* 531 U.S. 356, 363 (2001).  By extension, the Eleventh Amendment prohibits "not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."  *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429 (1997).

The Supreme Court crafted a limited exception to this doctrine in *Ex parte Young*, "which permits a federal court to issue prospective injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not a suit against the state for the purposes of the Eleventh Amendment."  *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908)).  The Supreme Court grounded this exception on the legal fiction that a state officer who commits an ongoing violation of

federal law "is . . . stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Ex parte Young*, 209 U.S. at 160.

For *Ex parte Young* to apply, a plaintiff must demonstrate an ongoing violation of federal law. *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 330 (4th Cir. 2001). "The requirement that the violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent." *Id.* (citation omitted). With this background in mind, the Court will first address Count One of the Second Amended Complaint.

A.    **Count One: Violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution**

In Count One of the Second Amended Complaint, Plaintiff contends that "[t]he failure to adopt [the] required reapportionment [of the Virginia state and congressional districts] violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States." (2d Am. Compl. ¶ 122.) He challenges Defendants' alleged decision to proceed with this year's general election for the House of Delegates "using the existing, old state legislative districts," because these districts do not "hav[e] the constitutionally required equally weighted populations within permitted deviations." (2d Am. Compl. ¶¶ 123, 125.) According to Plaintiff, the deviations between the House of Delegates district populations violate his "constitutional right to have his vote counted equally though his representatives elected to the General Assembly." (2d. Am. Compl. ¶ 124 (citing *Wesberry v. Sanders*, 376 U.S. 1, 18 (1964).) He argues that, under *Cosner*, he should have the ability to run for the House of Delegates in 2022 instead of having to wait until 2023 "due to the failure of the appropriate state authorities to adhere to the requirements of the federal constitutions (*sic*)." (2d Am. Compl. ¶ 128.)

Further, Plaintiff admonishes the alleged decision of Governor Northam, the Board members and Piper not to seek a formal written opinion from the Virginia Attorney General ("the Attorney General") on the constitutionality of holding this year's election using old maps. (2d Am. Compl. ¶ 129 (citing Va. Code § 2.2-505(A) (permitting the governor, a chairman or secretary of an electoral board or head of a state department, among others, to seek advice and an official advisory opinion on how to legally discharge their duties)).) Plaintiff alleges that this failure to seek the Attorney General's formal advice and opinion "raises the inference that Defendants have not operated with the 'good faith' generally required in redistricting law," and that Defendants "have put the interests of incumbent legislators ahead of the public's interest." (2d Am. Compl. ¶¶ 129-30.) Although he does not mention the statute, the Court assumes that Plaintiff brings this claim under 42 U.S.C. § 1983, which provides the vehicle for alleging violations of federal constitutional and statutory rights. *See* 42 U.S.C. § 1983 ("Every person who, under color of any statute . . . of any State subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.")

In their Motion to Dismiss, Defendants argue that the Court lacks jurisdiction to adjudicate this claim, because sovereign immunity under the Eleventh Amendment shields them. (Defs.' 2d Mem. at 5-9.) Plaintiff responds that Virginia plaintiffs have sued the Governor, the Board and Board members over redistricting disputes in federal court before, but courts did not dismiss these defendants on sovereign immunity grounds. (Pl.'s Resp. ¶¶ 9-65 (citing *Mahan v. Howell*, 410 U.S. 315, 317, 333 (1973) (affirming in part and reversing in part three-judge district court's finding that Virginia legislative reapportionment statutes permitted

constitutionally impermissible deviations in state House and Senate district populations); *Cosner*, 522 F.3d at 350, 364 (directing defendants, including the Governor of Virginia and members of the Board, to hold an off-cycle election for the House of Delegates).)

According to Plaintiff, because federal courts can raise sovereign immunity as a jurisdictional basis for dismissal *sua sponte*, the fact that federal courts do not typically dismiss the Governor, the Board or Board members as defendants implicitly demonstrates that they (and the Commissioner of Elections) constitute proper parties in redistricting-related challenges. (Pl.'s Resp. ¶¶ 114-18 (citing *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1997) ("[B]ecause of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even *sua sponte*.")).)  The Court first turns to Plaintiff's claim under Count One against the Board and Governor Northam separately, and then Piper and the Board members together.

###### i.      The Board

First, Defendants argue that the Board has immunity from suit, because it operates as an arm of the state and has not waived its sovereign immunity. (Defs.' 2d Mem. at 5-6.) Consequently, the Eleventh Amendment affords it the same protection as the Commonwealth itself. (Defs.' 2d Mem. at 5-6.)  As noted above, Plaintiff argues that Virginia plaintiffs have previously sued the Board in federal court, and the courts did not discuss this issue or grant the Board sovereign immunity.  (Pl.'s Resp. ¶¶ 9-65 (citing *Mahan*, 410 U.S. at 317; *Cosner*, 522 F. Supp at 350, 353).)  For that reason, he supposes, these courts implicitly found that the Board constitutes an appropriate party in redistricting-related challenges.  (Pl.'s Resp. ¶¶ 9-65.)

The Court disagrees with Plaintiff. *Ex parte Young* permits suits for injunctive and declaratory relief against individual officers or officials of a state or local government in their

official capacity to remedy violations of federal law. *Ex parte Young*, 209 U.S. at 178; *Libertarian Party of Va. v. Va. State Bd. of Elecs.*, 2020 WL 3732012, at *5 (E.D. Va. Sept. 16, 2010), *aff'd*, 434 F. App'x 174 (4th Cir. 2011). However, the Eleventh Amendment also immunizes states and those state entities that operate as "arms of the state." *Hutton v. S.C. Ret. Sys.*, 773 F.3d 536, 541 (4th Cir. 2014). An agency constitutes an "arm of the State" for Eleventh Amendment purposes and receives sovereign immunity when, "in its operations, the state is the real party in interest . . . [and] the named party [is] the *alter ego* of the state." *Ram Ditta ex rel. Ram Ditta v. Md. Nat'l Cap. Park and Plan. Com'n*, 822 F.2d 456, 457 (4th Cir. 1987) (citations omitted).

> In *Libertarian Party of Virginia v. Virginia State Board of Elections*, the court found that
>
> [T]he Board of Elections functions as a quintessential "arm of the State" with respect to approving candidates for official ballots and making other official election-related decisions. A suit against the State Board of Elections is therefore functionally equivalent to a suit against the Commonwealth of Virginia, and the State Board of Elections is entitled to the same protections of sovereign immunity as the Commonwealth itself.

2010 WL 3732012, at *5 (citing *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). The Court concurs with this analysis and finds that Plaintiff's claims against the Board cannot survive the Motion to Dismiss.

Plaintiff correctly points out that in several cases involving redistricting challenges, federal courts have not dismissed the Board — or the Governor or Board members — as defendants. (Pl.'s Resp. ¶¶ 9-65.) The explanation for this trend likely lies in the unique, "hybrid nature" of Eleventh Amendment immunity. *Wis. Dep't of Corrs. v. Schacht*, 524 U.S. 381, 394 (1998) (Kennedy, J., concurring).

The Supreme Court has framed the Eleventh Amendment as "enact[ing] a sovereign immunity from suit, rather than a nonwaivable limit on the federal judiciary's subject-matter

jurisdiction." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997).  By way of

illustration, the Eleventh Amendment bears characteristics of both subject-matter jurisdiction and

personal jurisdiction. *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474,

479-81 (4th Cir. 2005).  Like subject matter jurisdiction, parties can raise sovereign immunity at

any point during judicial proceedings. *Schact*, 524 U.S. at 394 (Kennedy, J., concurring).  But as

with personal jurisdiction, state defendants can waive sovereign immunity, and courts do not

have to examine the issue *sua sponte*, contrary to what Plaintiff asserts. (Pl.'s Resp. ¶¶ 9-65);

*Schact*, 524 U.S. at 394 (Kennedy, J., concurring); *Constantine*, 411 F.3d at 481.

    Thus, every court of appeals that has addressed the issue — including the Fourth Circuit

— has treated sovereign immunity in a manner similar to an affirmative defense, which the

defendant must assert and a federal court need not address *sua sponte*.[9] *Hutto*, 773 F.3d at 543

(listing cases).  Against this background, sovereign immunity "is not strictly an issue of subject-

matter jurisdiction, neither is it merely a defense to liability." *Constantine*, 411 F.3d at 482

(citing *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144-45 (1993)).

    Consequently, if the state defendants did not plead sovereign immunity in the

redistricting cases to which Plaintiff refers, then the deciding court had no obligation to discuss

it. (*See* Pl.'s Resp. ¶¶ 9-65 (citing *Mahan*, 410 U.S. 315; *Cosner*, 522 F. Supp. 350).)  The Board

does claim sovereign immunity in this case, however. (Defs.' 2d Mem. at 9-10.)  Congress has

---

[9]     Plaintiff cites *Suarez Corp. Industries* for the proposition that a federal court must
address Eleventh Amendment issues on its own initiative. (Pl.'s Resp. ¶¶ 114-18.)  However,
Plaintiff overstates the holding in that case.  As the Fourth Circuit more recently held, "[t]he
Supreme Court has made it clear that federal courts are not *required* to raise Eleventh
Amendment issues *sua sponte*." *Constantine*, 411 F.3d at 481 n.3 (alteration in original) (citing
*Schact*, 524 U.S. at 389).  In *dicta*, the Fourth Circuit has held that "because of its jurisdictional
nature, a court *ought* to consider the issue of Eleventh Amendment immunity at any time, even
*sua sponte*," but has not required courts to independently address the issue. *Id.* (emphasis added)
(quoting *Suarez Corp. Indus.*, 125 F.3d at 227).

not abrogated state sovereign immunity in claims brought under § 1983. *See Libertarian Party of Virginia*, 2010 WL 3732012, at *5 (noting that Congress has not abrogated sovereign immunity for states in § 1983 suits). And Defendants have not waived their sovereign immunity in this action, as they have only moved to dismiss the two Amended Complaints, responded to a Motion for Joinder and complied with the Court's requests for pleadings from them. *See Kadel v. N.C. State Health Plan for Teachers and State Emps.*, 12 F.4th 422, 450 (4th Cir. 2021) (Agee, J., dissenting) (stating that a state can waive sovereign immunity through "voluntary, affirmative litigation conduct" (citing *Lapides v. Bd. of Regents*, 535 U.S. 613, 619 (2002)). Since the Board serves as an arm of the state for Eleventh Amendment purposes, the *Ex parte Young* exception does not apply to it, and the Court must dismiss Plaintiff's claims against the Board. *See Libertarian Party of Virginia*, 2010 WL 3732012, at *5 (dismissing claim against the Board on sovereign immunity grounds).

### ii.    Governor Northam

In their Motion to Dismiss, Defendants argue that Governor Northam has immunity from suit because he merely bears a general obligation to enforce the laws of the Commonwealth, does not have a special relation with the electoral or redistricting processes and has not acted or threatened to enforce an unconstitutional policy. (Defs.' Mot. at 6-9.) Again, Plaintiff responds that in *Cosner*, *Mahan* and other redistricting-related cases, federal courts did not dismiss the Governor of Virginia on Eleventh Amendment grounds as lacking a special relation with the alleged unconstitutional policy. (2d Am. Compl. ¶¶ 9-65.) Further, he specifies that he does not contend that Governor Northam has the power to redraw district maps. (Pl.'s Resp. ¶¶ 119-20.) Rather, he challenges the alleged decision of Governor Northam and the other Defendants to conduct this year's election using maps based on outdated Census data. (Pl.'s Resp. ¶¶ 119-20.)

For the *Ex parte Young* exception to sovereign immunity to apply a particular state officer, a plaintiff must first prove that the state officer in question maintains a "special relation" with the contested statute, meaning that the officer has the authority to enforce the statute. *Ex parte Young*, 209 U.S. at 192; *Doyle v. Hogan*, 1 F.4th 249, 255 (4th Cir. 2021). This requirement limits plaintiffs to suing only those officers with the legal ability to remedy the alleged constitutional violation. *Ex parte Young*, 209 U.S. at 158. In turn, it ensures that "[any] federal injunction will be effective with respect to the underlying claim." *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008). The statute at issue may expressly declare that the official possesses enforcement powers, or some other general law may vest the official with those powers. *Ex parte Young*, 209 U.S. at 158. "General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Gilmore*, 252 F.3d at 331 (quoting *Children's Healthcare is a Legal Duty, Inc. v. Deters,* 92 F.3d 1412, 1416 (6th Cir. 1996)). For that reason, the "mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute." *Id.* (quoting *Shell Oil Co. v. Noel,* 608 F.2d 208, 211 (1st Cir. 1979)). However, plaintiffs do not bear a particularly heavy burden on this prong. They can satisfy this requirement by simply showing that the state officer in question has "*proximity to* and *responsibility for* the challenged state action," as opposed to some "*qualitatively* special" relationship. *Limehouse*, 549 F.3d at 333 (alterations in original).

At the second step of this analysis, a plaintiff must demonstrate that he has suffered an ongoing violation of his constitutional rights. *Ex parte Young*, 209 U.S. at 159-60; *Gilmore*, 252 F.3d at 330. "The requirement that the violation of federal law be ongoing is satisfied when a

state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent." *Gilmore*, 252 F.3d at 330 (citation omitted).

Here, Defendants assert that Governor Northam has no particular relation with the electoral process in Virginia outside of his general law enforcement duties and his authority to postpone an election in a state of emergency and set a special election when vacancies in office occur. (Defs.' 2d Mem. at 8 (citing Va. Code §§ 24.2-207, -209, -216, -603.1).) The Governor also appoints the five members of the Board and the Commissioner, whom the General Assembly must confirm. § 24.102. Article II of the Virginia Constitution, which establishes the state constitutional provisions on Virginia's electoral process, electoral officers and right to vote, does not confer upon the Governor any special electoral duties. Va. Const. art. II.

Plaintiff does not allege facts to suggest that Governor Northam bears a special connection to the Virginia electoral process beyond his general law enforcement role. Rather, he alleges that Governor Northam failed to exercise his discretion to ask the Attorney General for a formal opinion on the legality of proceeding with this year's elections using an old apportionment plan. (2d Am. Compl. ¶¶ 129-30 (citing Va. Code § 2.2-505).) He also argues that the office of the Governor of Virginia maintains a special relation to the enforcement of the current map of legislative districts, because Governor McDonnell signed the plan into law in 2011.[10] (2d Am. Compl. ¶¶ 49, 71-75; Pl.'s Resp. ¶ 124.) As he does with the Board, Plaintiff contends that in *Cosner*, *Mahan* and other Virginia election law cases, plaintiffs sued the Governor of Virginia in his official capacity in federal court, and the courts did not dismiss the

---

[10]     The fact that the Governor of Virginia signed this bill into law only speaks to the Governor's general enforcement power. Also, the enactment of the 2011 apportionment map occurred under a different districting scheme. The current scheme does not even require the Governor's signature, further evincing his lack of specific enforcement power in this instance. Va. Const. art. II, § 6-A(e).

Governor on sovereign immunity grounds, which demonstrates that Governor Northam constitutes a proper defendant.  (Pl.'s Resp.  ¶¶ 9-65.)

However, for the reasons discussed above, if the Governor did not raise Eleventh Amendment immunity in the cases that Plaintiff cites, then the federal courts deciding those cases had no duty to address the issue on their own initiative, rendering Plaintiff's supposition irrelevant to this analysis.  *See supra* Part I.A (discussing contours of sovereign immunity doctrine).  Since Governor Northam has no special relation with the conduct of Virginia elections beyond his general law enforcement authority, he does not constitute a proper party, and the Court must dismiss Plaintiff's claims against him.[11]

### ii.    The Board Members and Piper

Similarly, Defendants assert that the Eleventh Amendment shields Piper, Brink, O'Bannon and LeCruise from suit, because they "do not have authority to execute the remedies sought by Plaintiff."  (Defs.' 2d Mem. at 9.)  Board members "supervise and coordinate the work of the county and city electoral boards and of the registrars" to promote election integrity, uniformity, legality and purity.  (Defs.' 2d Mem. at 9 (quoting Va. Code § 24.2-103(A)).)  The Commissioner of the Department of Elections "carr[ies] out the electoral administrative and programmatic operations in the Commonwealth."  (Defs.' 2d Mem. at 9 (citing § 24.2-102).)  According to Defendants, these officers cannot set district plans or elections, so the *Ex parte Young* exception does not apply to them.  (Defs.' 2d Mem. at 9.)

In their Response to the Court's October 6, 2021 Order, Defendants posit that only the General Assembly can "regulate the time, place, manner, conduct and administration of . . .

---

[11]    Because the Court finds that Governor Northam bears no special relation to the process of setting an election, the Court will not discuss the prong of the test that addresses ongoing violations of constitutional law.  *Gilmore,* 252 F.3d at 330.

general . . . elections." (Defs.' Resp. to Oct. 6, 2021 Order at 2 (quoting Va. Const. art. II, § 4 (alterations in original).)  The General Assembly has, in turn, enacted a statute requiring general elections to be held "on the Tuesday after the first Monday in November or on the first Tuesday in May." (Defs.' Resp. to Oct. 6, 2021 Order at 2 (quoting Va. Code § 24.2-101).)

As explained above, Plaintiff argues in response that he does not challenge the electoral maps themselves or the Commission's failure to craft maps using the 2020 Census data in time for this year's election. (Pl.'s Resp. ¶¶ 119-20.)  Instead, he contests the decision to proceed with this year's election using the 2011 maps. (Pl.'s Resp. ¶¶ 119-20.)  Again, Plaintiff posits in response that federal courts have consistently allowed suits against members of the Board to proceed, and sovereign immunity should not protect them in this case as a result. (2d Am. Compl. §§ 9-65; Pl.'s Resp. ¶ 112.)  In *Cosner*, Plaintiff explains, the position of Commissioner of Elections did not yet exist.[12] (Pl.'s Resp. ¶ 177.)  The Court interprets this assertion to mean that the cases that Plaintiff cites do not shed light one way or the other on the propriety of Piper as a Defendant.

Of all his claims, Plaintiff's claim under the Equal Protection Clause against the Board members and Piper is the only one that can survive Defendants' Motion to Dismiss.  In *Grimes*, the Eastern District of Kentucky permitted a suit challenging the constitutionality of Kentucky's ballot access scheme to proceed against members of the state's board of elections, which administered the state's election, supervised voter registration and maintained voter rolls, and the secretary of state, who served as the "chief election official for the Commonwealth."  164 F. Supp. 3d 945, 949 (E.D. Ky. 2016) (quoting Ky. Rev. Stat. Ann. § 117.101(1)-(2)) (current

---

[12]    The position of Commissioner did not come into existence until 2014.  Markus Schmidt, *Edgardo Cortes, Commissioner of the Virginia Department of Elections*, Richmond Times-Dispatch (Aug. 10, 2014), https://richmond.com/edgardo-cortes-commissioner-of-the-virginia-department-of-elections/article_4f38f170-8a6a-5aca-bd40-57dd83654eae.html.

version at Ky. Rev. Stat. Ann. § 117.015(1)-(2)), *aff'd*, 835 F.3d 570 (6th Cir. 2016).  In that

case, third-party political groups challenged the statutory requirement that they gather a certain

number of signatures to appear on the ballot, while major parties could automatically receive

ballot access for a four-year period after a qualifying presidential election.  *Id.* at 947.

        Both the board members and secretary of state claimed that their authority to administer

elections "[was] too general" to strip them of sovereign immunity.  *Id.* at 949.  The court

disagreed.  *Id.* at 951.  It reasoned that the board members and secretary of state "[were] not

personally responsible for listing the candidates' names on ballots *per se*."  *Id.* at 950.  Still, they

bore some responsibility for "perpetuation of the ballot access regime," because they trained

county clerks and other members of county boards of elections.  *Id.*  Since "there [was] a realistic

probability that [these] official[s would] take legal or administrative actions against the

plaintiff's interests" — chiefly, facilitating an election under the challenged ballot access

framework — the board members and secretary constituted proper defendants.  *Id.* (quoting

*Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1048 (6th Cir. 2015)).

        Likewise, here, the Board members and Commissioner oversee and administer the

electoral process in Virginia.  (2d Am. Compl. ¶¶ 65-66.)  Like the board members and secretary

of state in Kentucky, these individuals facilitate the state's elections, even if they do not draw the

legislative district maps or set elections themselves.  (2d Am. Compl. ¶¶ 65-66); *Grimes*, 164

F.3d at 950.  "The fact that the state officer, by virtue of his office, has some connection with the

enforcement of the act, is the important and material fact."  *Ex parte Young*, 209 U.S. at 157.

Defendants may be correct that only the General Assembly can set and regulate the timing and

conduct of an election.  (Pl.'s Resp. to Oct. 6, 2021 Order at 2 (quoting Va. Const. art. II, § 4).)

But the Board members and Piper oversee the execution of the General Assembly's enactments.

(2d Am. Compl. ¶¶ 65-66.)  *Ex parte Young* exists to ensure that the officials with enforcement — not legislative — power comply with the Constitution.  *See Ex parte Young*, 209 U.S. at 161 (finding that state attorney general had sufficient connection to the enforcement of the statute at issue to be sued).

Therefore, here, the Board members and Commissioner maintain the special enforcement relationship with the electoral process that Governor Northam lacks.  And unlike the Board, they each serve as individual state officers, and not as an arm of the state.  For these reasons, the Court finds that Plaintiff's claim under Count One against the Board members and the Commissioner survives the Motion to Dismiss.

### B.       Count Two: Violation of Art II, §§ 6 and 6-A of the Virginia Constitution

In Count Two of the Second Amended Complaint, Plaintiff argues that the Virginia Constitution requires the implementation of state legislative and congressional districts based on the most recent decennial census, and that elections for the House of Delegates occur using those new plans in the same year.  (2d Am. Compl. ¶¶ 135-43.)  In their Motion to Dismiss, Defendants assert that Plaintiff cannot use the *Ex parte Young* exception to enforce compliance with the Virginia Constitution, as the exception applies only to violations of federal law.  (Defs.' 2d Mem. at 9-10.)  Further, they posit that Virginia has not waived its Eleventh Amendment immunity.  (Defs.' 2d Mem. at 10.)

Plaintiff responds that the Commonwealth has waived its sovereign immunity.  In support of this supposition, he cites Article I, § 2 of the Virginia Constitution, which states that "[t]hat all power is vested in, and consequently derived from, the people, that magistrates are their trustees and servants, and at all times amenable to them."  Va. Const. art. I, § 2.  According to Plaintiff, Virginia voters have the power to waive the Commonwealth's sovereign immunity pursuant to

this state constitutional provision. (2d. Am. Compl. ¶ 140.) Thus, when Virginia voters approved Article II, § 6-A of the Virginia Constitution, Defendants lost the protection of sovereign immunity in suits brought under that provision. (2d Am. Compl. ¶¶ 112-14; Pl.'s Resp. ¶¶ 88-100.) Plaintiff elaborates that if Virginia voters cannot sue state election officials for violations of this state constitutional provision, then they have no avenue to ensure that the electoral maps are redrawn in accordance with decennial Census data, and that these maps are implemented in time for the general election in the year following the Census. (2d Am. Compl. ¶ 113; Pl.'s Resp. ¶ 96.)

Plaintiff's argument overlooks the purpose of the *Ex parte Young* exception. That doctrine exists to provide an exception to sovereign immunity only in cases of ongoing violations of federal — not state — law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). "*Ex parte Young* was the culmination of efforts by this Court to harmonize the principles of the Eleventh Amendment with the effective supremacy of rights and powers secured elsewhere *in the Constitution*." *Perez v. Ledesma*, 401 U.S. 82, 106 (1971) (Brennan, J., concurring in part and dissenting in part) (emphasis added). Count Two alleges a violation of the Virginia Constitution, and consequently, the Court cannot redress that claim under the *Ex parte Young* exception.

Moreover, the Commonwealth has not waived sovereign immunity as to claims of violations of Article II, § 6-A of the Virginia Constitution. "The test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985). "[A] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued . . . for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity,

24

it must specify the State's intention to subject itself to suit in *federal court.*" *Id.* at 241

(alterations in original) (internal citation and quotation marks omitted). "In deciding whether a

State has waived its constitutional protection under the Eleventh Amendment, [a court] will find

waiver only where stated by the most express language or by such overwhelming implications

from the text as [will] leave no room for any other reasonable construction." *Edelman v. Jordan,*

415 U.S. 651, 673 (1974) (citation and internal quotation marks omitted).

Nowhere in the Virginia Constitution does Virginia consent to suit in federal court.

*Lighthouse Fellowship Church v. Northam,* 515 F. Supp. 3d 384, 399 (E.D. Va. 2021).

Furthermore, Plaintiff cites no Virginia Supreme Court decisions indicating that the

Commonwealth has waived sovereign immunity from suit in federal court on state constitutional

claims, nor has the Court discovered any.[13] *See id.* (finding in suit against Virginia governor that

the parties and that court had not located any state supreme court decisions waiving Eleventh

Amendment immunity in federal court on state constitutional claims). Instead, Plaintiff simply

---

[13]     The Supreme Court of Virginia has indeed held that "sovereign immunity does not
preclude declaratory and injunctive relief claims based on self-executing provisions of the
Constitution of Virginia or claims based on federal law. *DiGiacinto v. Rector & Visitors of
George Mason Univ.*, 704 S.E.2d 365, 371 (4th Cir. 2011).

> A constitutional provision is self-executing when it expressly so declares. . . .
> [C]onstitutional provisions in bills of rights and those merely declaratory of common law
> are usually considered self-executing.  The same is true of provisions which specifically
> prohibit particular conduct. "Provisions of a Constitution of a negative character are
> generally, if not universally, construed to be self-executing."

*Robb v. Shockoe Slip Found.*, 324 S.E.2d 674, 681-82 (Va. 1985) (quoting *Robertson v.
Staunton*, 51 S.E. 178, 179 (Va. 1905).

     Article II, §§ 6 and 6-A of the Virginia Constitution do not contain an explicit declaration
that they are self-executing.  Even if Article II, §§ 6 and 6-A constitute self-executing provisions,
they still would not waive sovereign immunity in federal court, because a state must do so
clearly and unambiguously.  *See Lighthouse Fellowship Church*, 515 F. Supp. 3d at 399 n.3
(assuming *arguendo* that Virginia constitutional provisions at issue were self-executing but
finding them not sufficient to waive a state's sovereign immunity in federal court).

asserts that "the public support of the new constitutional language as evidenc[es] a public intention to make certain Virginia adheres to case law." (Pl.'s Resp. ¶ 98.) Without more, the Court cannot find that Virginia waived its sovereign immunity as to the provisions of the Constitution of Virginia under which Plaintiff sues, and therefore, must dismiss Count Two of the Second Amended Complaint.

## IV.    CONCLUSION

For the reasons set forth above, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 23). Specifically, the Court GRANTS Defendants' Motion as to Count One against Governor Northam and the Board and Count Two as to all Defendants. However, the Court DENIES Defendants' Motion as to Count One as to Brink, O'Bannon, LeCruise and Piper.

An appropriate Order will issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

It is so ORDERED.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Date: October 12, 2021