**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| **Paul Goldman,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:21-CV-420** |
| | ) | |
| **Robert Brink, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**
**THE SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER**
**FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)**

Jason S. Miyares
 *Attorney General*

Charles H. Slemp III (VSB #79742)
 *Chief Deputy Attorney General*

Steven G. Popps (VSB #80817)
 *Deputy Attorney General*

Joshua N. Lief (VSB #37094)
 *Senior Assistant Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7704 – Telephone
(804) 371-0200 – Facsimile
AFerguson@oag.state.va.us

Andrew N. Ferguson (VSB #97533)
 *Solicitor General*

Erika L. Maley (VSB #97533)
 *Principal Deputy Solicitor General*

Kevin M. Gallagher (VSB #87548)
Lucas W.E. Croslow (VSB #97517)
 *Deputy Solicitors General*

Graham K. Bryant (VSB #90592)
Annie Chiang (VSB #94703)
M. Jordan Minot (VSB #95321)
 *Assistant Solicitors General*

*Counsel for Defendants Robert H. Brink, John
O'Bannon, Jamilah D. LeCruise, and Susan
Beals*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................................... 2

    I.    Virginia's Redistricting Process and the 2021 General Election ....................................... 2

    II.   Goldman's Lawsuit .......................................................................................................... 3

LEGAL STANDARD ..................................................................................................................... 5

ARGUMENT .................................................................................................................................. 6

    I.    Judge Novak should rule on Goldman's standing to sue ................................................... 7

    II.   Goldman lacks standing to bring his remaining claim .................................................... 11

        A.    Goldman lacks standing as a voter .......................................................................... 12

        B.    Goldman lacks standing as a candidate .................................................................... 19

        C.    Even if Goldman had standing at the outset of this litigation, the Court no longer has jurisdiction over this claim because it is moot ................................................... 23

    III.  Oral argument on standing is not necessary ................................................................... 28

CONCLUSION ............................................................................................................................. 28

# TABLE OF AUTHORITIES

**Cases**

*24th Senatorial Dist. Republican Comm. v. Alcorn*,
  820 F.3d 624 (4th Cir. 2016) ................................................................5

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) ..............................................................................24

*Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*,
  576 U.S. 787 (2015)..............................................................................19

*Arizonans for Off. Eng. v. Arizona*,
  520 U.S. 43 (1997)................................................................................23

*Atlee v. Laird*,
  339 F. Supp. 1347 (E.D. Pa. 1972), aff'd 411 U.S. 911 (1973)...........8, 9

*Baker v. Carr*,
  369 U.S. 186 (1962)........................................................................13, 14

*Bd. of Supervisors of Carroll Cnty. v. Smith*,
  111 U.S. 556 (1884)..............................................................................13

*Bethune-Hill v. Va. State Bd. of Elections*,
  368 F. Supp. 3d 872 (E.D. Va. 2019) ................................................3, 18

*Billups v. United States*,
  433 F. Supp. 3d 916 (E.D. Va. 2020) (Novak, J.)..................................5

*Bradley v. Sch. Bd. of City of Richmond, Va.*,
  324 F. Supp. 396 (E.D. Va. 1971) .......................................................10

*Brown v. Thomson*,
  462 U.S. 835 (1983)........................................................................15, 18

*Carney v. Adams*,
  141 S. Ct. 493 (2020)..................................................................21, 22, 23

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)................................................................................25

*City of Philadelphia v. Klutznick*,
  503 F. Supp. 663 (E.D. Pa. 1980) .......................................................20

*Cosner v. Dalton*,
  522 F. Supp. 350 (E.D. Va. 1981) ....................................................24, 25

*Crossen v. Breckenridge*,
    446 F.2d 833 (6th Cir. 1971) ..................................................................................7

*Democratic Nat'l Comm. v. Wis. State Legis.*,
    141 S. Ct. 28 (2020) ..........................................................................................27

*Dep't of Commerce v. U.S. House of Representatives*,
    525 U.S. 316 (1999) ..........................................................................................18

*Edley-Worford v. Va. Conf. of United Methodist Church*,
    430 F. Supp. 3d 132 (E.D. Va. 2019) (Novak, J.) ................................................6

*Ex parte Poresky*,
    290 U.S. 30 (1933) ..........................................................................................7, 8

*Fairley v. Patterson*,
    493 F.2d 598 (5th Cir. 1974) ..........................................................................15, 17

*Gaffney v. Cummings*,
    412 U.S. 735 (1973) ..........................................................................................18

*Garcia v. 2011 Legislative Reapportionment Comm'n*,
    559 Fed. Appx. 128 (3d Cir. 2014) ................................................................16, 17

*Getty v. Reed*,
    547 F.2d 971 (6th Cir. 1977) ............................................................................8

*Gill v. Whitford*,
    138 S. Ct. 1916 (2018) ..........................................................13, 14, 16, 17

*Goldman v. Brink*,
    No. 21-2180, 2022 WL 794968 (4th Cir. Mar. 15, 2022) ................................5, 16

*Gonzalez v. Automatic Emp. Credit Union*,
    419 U.S. 90 (1974) ..........................................................................................8, 9, 10

*Hancock Cnty. Bd. of Supervisors v. Ruhr*,
    487 Fed. Appx. 189 (5th Cir. 2012) ................................................................14, 26

*Haynes v. Dallas County Junior College District*,
    386 F. Supp. 208 (N.D. Tex. 1974) ................................................................10

*Hoepfl v. Barlow*,
    906 F. Supp. 317 (E.D. Va. 1995) ..................................................................25

*Hollingsworth v. Perry*,
    570 U.S. 693 (2013) ..........................................................................................20

*Jacobs v. Tawes*,
    250 F.2d 611 (4th Cir. 1957) ................................................................8

*Karcher v. Daggett*,
    462 U.S. 725 (1983)................................................................15, 18

*Kenny v. Wilson*,
    885 F.3d 280 (4th Cir. 2018) ................................................................25

*Kesler v. Dep't of Public Safety*,
    369 U.S. 153 (1962)................................................................11

*Kirkpatrick v. Preisler*,
    394 U.S. 526 (1969)................................................................15, 18

*League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors*,
    737 F.2d 155 (2d Cir. 1984)................................................................15, 17

*Libertarian Party of Va. v. Judd*,
    718 F.3d 308 (4th Cir. 2013) ................................................................12

*Lovern v. Edwards*,
    190 F.3d 648 (4th Cir. 1999) ................................................................6

*Mahan v. Howell*,
    410 U.S. 315 (1973)................................................................15

*Massachusetts v. Mellon*,
    262 U.S. 447 (1923)................................................................20

*Md. Citizens for a Representative Gen. Assembly v. Governor of Md.*,
    429 F.2d 606 (4th Cir. 1970) ................................................................7

*Md. Shall Issue, Inc. v. Hogan*,
    971 F.3d 199 (4th Cir. 2020) ................................................................17

*Merrill v. Milligan*,
    142 S. Ct. 879 (2022)................................................................27

*Moore v. Harper*,
    142 S. Ct. 1089 (2022)................................................................27, 28

*MTM, Inc. v. Baxley*,
    420 U.S. 799 (1975)................................................................10

*Nanni v. Aberdeen Marketplace, Inc.*,
    878 F.3d 447 (4th Cir. 2017) ................................................................25

*Nken v. Holder,*
    556 U.S. 418 (2009)...................................................................................24

*O'Shea v. Littleton,*
    414 U.S. 488 (1974)...................................................................................25

*Okla. Gas & Elec. Co. v. Okla. Packing Co.,*
    292 U.S. 386 (1934)............................................................................10, 11

*Pennhurst State Sch. & Hosp. v. Halderman,*
    465 U.S. 89 (1984).....................................................................................18

*Phillips v. United States,*
    312 U.S. 246 (1941)...................................................................................11

*Puerto Rico Int'l Airlines, Inc. v. Colon,*
    409 F. Supp. 960 (D.P.R. 1975)..................................................................8

*Purcell v. Gonzalez,*
    549 U.S. 1 (2006) (per curiam)............................................................27, 28

*Qimonda AG v. LSI Corp.,*
    857 F. Supp. 2d 570 (E.D. Va. 2012) ......................................................23

*Republican Nat'l Comm. v. Democratic Nat'l Comm.,*
    140 S. Ct. 1205 (2020) (per curiam).........................................................27

*Reynolds v. Sims,*
    377 U.S. 533 (1964)...............................................................13, 14, 16, 18

*Shapiro v. McManus,*
    577 U.S. 39 (2015)...............................................................................7, 8, 9

*Sharrow v. Fish,*
    501 F. Supp. 202 (S.D.N.Y. 1980), aff'd 659 F.2d 1062 (2d Cir. 1981)...................8

*Sharrow v. Peyser,*
    443 F. Supp. 321 (S.D.N.Y. 1977), aff'd 582 F.2d 1271 (2d Cir. 1978)...................8

*Shays v. FEC,*
    414 F.3d 76 (D.C. Cir. 2005) ....................................................................20

*Simkins v. Gressette,*
    631 F.2d 287 (4th Cir. 1980) ......................................................................7

*Skolnick v. Bd. of Comm'rs of Cook Cnty.,*
    435 F.2d 361 (7th Cir. 1970) ....................................................................16

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016)........................................................................................12, 13

*Steel Co. v. Citizens for a Better Envt.,*
    523 U.S. 83 (1998)................................................................................................22

*Swift & Co. v. Wickham,*
    382 U.S. 111 (1965)................................................................................................7

*Tennant v. Jefferson Cnty. Comm'n,*
    567 U.S. 758 (2012) (per curiam).......................................................................15

*Toth v. Chapman,*
    2022 WL 821175 (M.D. Pa. Mar. 16, 2022).......................................................19

*United States Parole Comm'n v. Geraghty,*
    445 U.S. 388 (1980)........................................................................................24, 25

*United States v. Hays,*
    515 U.S. 737 (1995)..............................................................................................14

*United States v. Poole,*
    531 F.3d 263 (4th Cir. 2008) ................................................................................6

*United States v. Richardson,*
    418 U.S. 166 (1974)..............................................................................................12

*Uzuegbunam v. Preczewski,*
    141 S. Ct. 792 (2021)......................................................................................23, 25

*White v. Regester,*
    412 U.S. 755 (1973)..............................................................................................15

*Whitmore v. Arkansas,*
    495 U.S. 149 (1990)..............................................................................................22

*Wright v. Dougherty County,*
    358 F.3d 1352 (11th Cir. 2004) ..........................................................................17

*Young v. Walker,*
    435 F. Supp. 1089, 1095 (M.D. Fla. 1977)..........................................................10

**Constitutional Provisions**

U.S. Const. Amd. XIV ........................................................................1, 15, 18, 21

U.S. Const. art. III ...................................................................................... passim

Va. Const. art. II § 6-A ..........................................................................................3

**Statutes**

13 U.S.C. § 141 ................................................................................................................2

28 U.S.C. § 2284 ...................................................................................................... passim

52 U.S.C. § 10301 ..........................................................................................................18

Va. Code § 30-397 ............................................................................................................3

**Other Authorities**

1 Dan B. Dobbs, *Law of Remedies* (2d ed. 1992) ........................................................22

17A Fed. Prac. & Proc. Juris. § 4235 (3d ed.) .............................................................10

Black's Law Dictionary "Injunction" (11th ed., 2019).................................................24

Federal Rule of Civil Procedure 12(b)(1) ..................................................................5, 6

Federal Rule of Civil Procedure 25(d) ..........................................................................4

H.B. 5005, Va. Gen. Assem. (Spec. Sess. 2011) ...........................................................3

## INTRODUCTION

Plaintiff Paul Goldman claims that the 2021 House of Delegates election was illegitimate. He argues that Virginia election officials violated the Fourteenth Amendment to the U.S. Constitution by holding the election with legislative maps based on 2010 Census data, rather than with new maps based on 2020 Census data—which the Commonwealth had not received when the electoral process began because of delays caused by the COVID-19 pandemic.

Goldman's claim is devoid of merit, but this Court lacks jurisdiction to decide it. Voting is an individual right. A plaintiff has Article III standing to attack the apportionment of a State's legislative districts only if the makeup of the plaintiff's district diluted his individual vote. If a voter cast his vote in a district that was properly apportioned or overrepresented, he lacks standing to attack the legislative map even if malapportioned districts exist elsewhere in the State.

Goldman does not even allege—nor has he provided any evidence—that he voted in the 2021 election; he therefore cannot claim to have suffered an injury to his right to vote. Even if Goldman did vote in the 2021 election, he would lack standing. The 2020 Census data on which Goldman relies reveal that the population of the House of Delegates district in which he was registered to vote in 2021 was about 1.12% smaller than the ideal district given Virginia's total 2020 population, and about 2.77% smaller than the district in which Goldman became registered after the 2021 redistricting process. He therefore suffered no injury from any alleged malapportionment. Indeed, his vote—had he cast it—was worth more than it would have been under a purely proportional system of apportionment, and was worth more than it would be in the special election he asks this Court to impose.

Nor does Goldman have standing as a "candidate." Candidates categorically do not suffer any injury from malapportionment. And even if they did, Goldman's district was not

1

malapportioned. Moreover, he has failed to prove that he would have run in the 2021 election, or that he is ready and able to run in any future election.

Because Goldman lacks standing, this Court should bring this litigation to a swift conclusion and dismiss his claim.

## FACTUAL BACKGROUND

### I.     Virginia's Redistricting Process and the 2021 General Election

Virginia's redistricting process was delayed into the 2021 election cycle due to the COVID-19 pandemic and the federal government's failure to timely deliver the 2020 Census data to the States. When the electoral process began in Virginia in 2021, the 2020 Census data *did not exist*. Indeed, no State had 2020 Census data when Goldman filed this suit in June 2021. The COVID-19 pandemic prevented the federal government from complying with its statutory deadlines to deliver census data to the States, and Virginia did not obtain usable data from the 2020 Census until 79 days *after* the conclusion of the 2021 House of Delegates primary elections—merely 23 days before early voting began in the general election.

By statute, the United States Secretary of Commerce was to deliver the apportionment reports from the 2020 Census to the President of the United States by December 31, 2020, but did not deliver those reports to the President until April 26, 2021. Stipulation of Facts ("SOF") ¶ 1 (ECF No. 73); see also 13 U.S.C. § 141(b). Similarly, by statute, the United States Census Bureau was to deliver 2020 Census data to the States for redistricting purposes by April 1, 2021, see 13 U.S.C. § 141(c); on February 12, 2021, however, the Census Bureau stated that it would not be able to deliver the data until as late as September 30, 2021, SOF ¶ 2.

On August 12, 2021, the United States Census Bureau released census data to the States in Legacy Format Summary Files. *Id.* ¶ 3. The format in which those data were delivered was

incompatible with the mapping software the Virginia Redistricting Commission planned to use, and the Commission therefore hired an outside consultant to reformat those data. *Ibid*. The Commission commenced the redistricting process when it received those reformatted data on August 26, 2021. *Id.* ¶ 5. August 26 was 79 days *after* the primary elections for the House of Delegates (early voting for those primaries had begun on March 20), and absentee voting for the general House of Delegates election would begin 23 days later. *Id.* ¶¶ 13, 15, 19.

The Commission was unable to present redistricting plans for the Virginia Senate or House of Delegates to the General Assembly within 45 days of receiving the reformatted data. *Id.* ¶¶ 3–7. The responsibility for creating redistricting plans therefore transferred from the Commission to the Supreme Court of Virginia. *Id.* ¶ 7; see also Va. Code § 30-397(C); Va. Const. art. II § 6-A(d), (g).

The 2021 House of Delegates election took place on November 2, 2021. SOF ¶ 8. The House of Delegates districts used in that election were the only ones in existence when the election began—those originally adopted by the General Assembly in 2011, on the basis of the 2010 Census, H.B. 5005, Va. Gen. Assem. (Spec. Sess. 2011), as modified by a three-judge panel of this Court in 2019, see *Bethune-Hill v. Va. State Bd. of Elections*, 368 F. Supp. 3d 872, 889 (E.D. Va. 2019). The Supreme Court of Virginia completed the congressional and state legislative redistricting plans on December 28, 2021. SOF ¶ 9.

## II.    Goldman's Lawsuit

On June 28, 2021, twenty days after the 2021 Democratic primary for the House of Delegates was held—and nearly two months before Virginia received census data from the federal government—Paul Goldman filed his initial complaint in this action, alleging that various state officials were violating the U.S. and Virginia Constitutions by conducting the upcoming 2021

general election for the House of Delegates with legislative districts drawn on the basis of 2010 Census data. See Compl. (ECF No. 1). Goldman contended that Virginia's failure to conduct redistricting violated what he believes is an immutable constitutional rule requiring redistricting every ten years—even if the State does not have the necessary census data. *Id.* ¶¶ 11–14, 42–55. The only appropriate remedy, he contended, would be a federal injunction dissolving the House of Delegates and declaring a special election in November of 2022. *Id.* at 14. Although styled as a request for a declaratory judgment, Goldman named as defendants then-Governor Ralph Northam, the Virginia State Board of Elections, and various Election Officials in their official capacities—Christopher Piper (Commissioner of the Virginia Department of Elections);[1] Jamilah D. LeCruise (Secretary of the State Board of Elections); John O'Bannon (Vice Chair of the State Board of Elections); and Robert Brink (Chairman of the State Board of Elections). See *id.* at 1.[2]

Goldman twice amended his complaint. See First Amend. Compl. (ECF No. 3); SAC (ECF No. 18). Defendants moved to dismiss the SAC as barred by sovereign immunity. See Mot. to Dismiss (ECF No. 23). Following a hearing on October 12, 2021, the single-judge district court—presided over by Judge David J. Novak—granted the motion as to Goldman's claim under the Virginia Constitution, and as to Goldman's purported federal claim against the Governor and the Virginia State Board of Elections. See Mem. Op. 17 (ECF No. 40). Judge Novak denied the motion as to the purported federal claim against the Election Officials. *Id.* at 18–19.

Judge Novak ordered the Election Officials to notify the Court by October 18, 2021, whether they intended to seek interlocutory review of his order denying sovereign immunity. See

---

[1] Susan Beals currently serves as the Commissioner of the Virginia Department of Elections and is automatically substituted as a party per Federal Rule of Civil Procedure 25(d).

[2] Goldman had also sued Jessica Bowman in her official capacity as Deputy Commissioner of the State Board of Elections, but she was not included in the operative Second Amended Complaint. See Second Amend. Compl. ("SAC") (ECF No. 18).

Order ¶ 1 (ECF No. 41). Judge Novak further ordered that, if the Election Officials filed a notice

of appeal, all further proceedings would be stayed pending the resolution of that appeal. *Ibid.*

Finally, he established a schedule for the parties to brief Article III standing questions, which had

not yet been resolved. *Id.* ¶¶ 4–7. Judge Novak stated at the October 12 hearing that he intended

to decide the standing questions before a three-judge district court was convened. See Oct. 12,

2021 Hr'g Tr. 16–17 (ECF No. 43). Chief Judge Gregory, however, issued an order on the day of

the hearing stating that "[Judge] Novak has requested appointment of a three-judge district court,"

and appointing Circuit Judge Thacker and Senior District Judge Jackson to sit with Judge Novak

as a three-judge court. See Order 1 (ECF No. 44).

The Election Officials timely noticed their appeal on October 18, 2021. See Notice of

Appeal (ECF No. 47). Judge Novak stayed the case pending disposition of the appeal. See Order

(ECF No. 49). On March 15, 2022, the United States Court of Appeals for the Fourth Circuit

ordered a limited remand to "the district court" for it to "assess and resolve whether Goldman

possesses Article III standing to sue." *Goldman v. Brink*, No. 21-2180, 2022 WL 794968, at *1

(4th Cir. Mar. 15, 2022). The Fourth Circuit "retain[ed] jurisdiction in this appeal," which was

"stayed pending resolution of the remand proceedings." *Ibid.*

## LEGAL STANDARD

"A motion made pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the

court's jurisdiction over the subject matter of the complaint." *Billups v. United States*, 433 F. Supp.

3d 916, 920 (E.D. Va. 2020) (Novak, J.). "A defendant may challenge subject matter jurisdiction"

both by "contend[ing] that the complaint simply fails to allege facts upon which subject matter

jurisdiction can be based," and by "contend[ing] that the jurisdictional allegations of the complaint

were not true." *24th Senatorial Dist. Republican Comm. v. Alcorn*, 820 F.3d 624, 629 (4th Cir.

2016) (quotation marks and brackets omitted). Where, as here, the defendant makes both arguments, the trial court, if necessary, "may then go beyond the allegations of the complaint and hold an evidentiary hearing to determine if there are facts to support the jurisdictional allegations." *Ibid*. (quotation marks omitted). "It is elementary that the burden is on the party asserting jurisdiction to demonstrate that jurisdiction does, in fact, exist." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). "A court is to presume . . . that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." *United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008). Further, in "considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), a court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Edley-Worford v. Va. Conf. of United Methodist Church*, 430 F. Supp. 3d 132, 133-34 (E.D. Va. 2019) (Novak, J.) (citing *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

## ARGUMENT

This Court directed the Election Officials to address three issues in their motion to dismiss: (1) whether, under 28 U.S.C. § 2284, Judge Novak, acting alone, should rule on Goldman's standing to sue, or whether the three-judge panel appointed by Chief Judge Roger L. Gregory, of the Fourth Circuit, must rule on this issue; (2) whether Goldman has standing as a voter or as a candidate for the House of Delegates; and (3) whether oral argument on standing is necessary. As to the first question, Judge Novak, acting alone, should rule on Goldman's standing to sue. As to the second question, Goldman does not have standing as either a voter or as a candidate, nor has he maintained a personal interest in this lawsuit since he filed it. As to the third question, oral argument on standing is not necessary.

I.      **Judge Novak should rule on Goldman's standing to sue**

As a threshold matter, this Court instructed the parties to brief whether, under 28 U.S.C. § 2284, Judge Novak, acting alone, should rule on Goldman's standing to sue, or whether the three-judge panel appointed by Chief Judge Gregory must rule on this issue. The Election Officials submit that Judge Novak should rule on this issue, and, if necessary, the three-judge panel should dissolve itself to allow Judge Novak to dismiss this case for lack of standing.

Section 2284 provides that a "district court of three judges shall be convened . . . when an action is filed challenging the constitutionality of . . . the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a). But convening a three-judge court is not automatic. The statute charges the district judge "to whom the request [for a three-judge panel] is presented" with first determining whether "three judges are not required." *Id.* § 2284(b)(1).

A three-judge court is "not required" if the constitutional claim is "insubstantial." *Shapiro v. McManus*, 577 U.S. 39, 44 (2015); *Swift & Co. v. Wickham*, 382 U.S. 111, 114–15 (1965). "Insubstantiality in the claim may appear because of the absence of federal jurisdiction, lack of substantive merit in the constitutional claim, or because injunctive relief is otherwise unavailable." *Md. Citizens for a Representative Gen. Assembly v. Governor of Md.*, 429 F.2d 606, 611 (4th Cir. 1970) (footnotes omitted); *see also Simkins v. Gressette*, 631 F.2d 287, 295 (4th Cir. 1980) (same). The one-judge district court must first "carefully scrutinize the bill of complaint to ascertain whether a substantial question is presented." *Ex parte Poresky*, 290 U.S. 30, 32 (1933); *see also Crossen v. Breckenridge*, 446 F.2d 833, 837 (6th Cir. 1971) (before convening a three-judge district court, "the district judge must initially find that plaintiffs with standing have presented a 'case or controversy'").

If a court lacks subject-matter jurisdiction over a Section 2284 claim, the district judge may "decline[ ] to convene a three-judge court," or, if the jurisdictional defect is discovered after the court is convened, the three-judge court may "dissolve[ ] itself, leaving final disposition of the complaint to a single judge." *Gonzalez v. Automatic Emp. Credit Union*, 419 U.S. 90, 100 (1974); *Getty v. Reed*, 547 F.2d 971, 973 (6th Cir. 1977) (observing that the single district judge "can and should . . . screen the pleading filed and dismiss it if . . . the District Court has no jurisdiction over the action"); accord *Ex parte Poresky*, 290 U.S. at 32. Thus, "[t]he decisions have uniformly held that the single district judge to whom an action is originally presented may refuse to request a three-judge court and dismiss the action if he concludes that the general requisites of federal jurisdiction are not present." *Atlee v. Laird*, 339 F. Supp. 1347, 1350 (E.D. Pa. 1972), aff'd 411 U.S. 911 (1973); see, *e.g.*, *Jacobs v. Tawes*, 250 F.2d 611, 614 (4th Cir. 1957) (amount in controversy); *Sharrow v. Fish*, 501 F. Supp. 202, 204 (S.D.N.Y. 1980) (standing), aff'd 659 F.2d 1062 (2d Cir. 1981); *Sharrow v. Peyser*, 443 F. Supp. 321, 323, 325 (S.D.N.Y. 1977) (standing), aff'd 582 F.2d 1271 (2d Cir. 1978); *Puerto Rico Int'l Airlines, Inc. v. Colon*, 409 F. Supp. 960, 966 (D.P.R. 1975) (standing).

The Supreme Court recently reaffirmed that a single-judge district court may dismiss a Section 2284 claim for lack of jurisdiction. In *McManus*, the Court held that "Congress intended a three-judge court, and not a single district judge, to enter all final judgments in cases satisfying the criteria of § 2284(a)" given Section 2284(b)(3)'s "explicit command" that "[a] single judge shall not . . . enter judgment on the merits." 577 U.S. at 44.[3] But the Court also noted that it has

---

[3] Before 1976, Section 2284 provided that a single judge could not "dismiss the action, or enter a summary or final judgment." 28 U.S.C. § 2284(5) (1970). Notwithstanding this statutory language, the Supreme Court "always recognized" a single judge's "power to dismiss a complaint for want of general subject-matter jurisdiction." *Gonzalez*, 419 U.S. at 96 n.14. In 1976, Congress removed Section 2284(5) and replaced it with Section 2284(b)(3), which precludes single judges

"long distinguished" between "failing to raise a substantial federal question for jurisdictional purposes" and "failing to state a claim for relief on the merits." *Id.* at 45. Where a complaint does not properly invoke the court's jurisdiction at all, it is axiomatic that a single district judge may dismiss the claim. *Id.* at 44–45; see also *Gonzalez*, 419 U.S. at 99 (single-judge district courts may rule on "issues short of the merits" such as "subject-matter jurisdiction"); *Atlee*, 339 F. Supp. at 1350.

During the October 12, 2021 hearing, Judge Novak raised Goldman's Article III standing *sua sponte*, recognized that he had authority under Section 2284 to decide jurisdictional issues such as standing while sitting as a single-judge district court, and expressed his intention to do so. Oct. 12, 2021 Hr'g Tr. 4, 9, 16, 40 (ECF No. 43). Judge Novak remarked that he would need to decide whether Goldman had standing to press his federal claim "before we get to the three-judge panel because standing is jurisdictional." *Id.* at 16. He elaborated that "even though I've got Judge Gregory on notice that we *may* need a three-judge panel, I'm going to deal with standing first." *Ibid.* (emphasis added); see also *id.* at 34–35, 37, 41–42.

Following the October 12, 2021 hearing, and before the jurisdictional issues were addressed, Chief Judge Gregory convened a three-judge panel. To the extent necessary, therefore, the three-judge panel should dissolve itself and allow Judge Novak to rule on the standing issue in the first instance for two reasons. First, three-judge district courts have treated dissolution as the appropriate course when a potential jurisdictional defect is discovered after the court is convened.

---

only from "enter[ing] judgments on the merits." It would be strange indeed to interpret Congress's replacement of a prohibition on single-judge district courts entering "final judgments" of any kind with a narrower prohibition against judgments "on the merits" as having abrogated the then-undisputed power of a single district judge to dismiss cases for lack jurisdiction. Unsurprisingly, then, *McManus* confirmed the power of a single district judge to dismiss a Section 2284 complaint for want of jurisdiction.

See *Gonzalez*, 419 U.S. at 100 (noting that lack of standing is "a ground . . . upon which the three-judge court could have dissolved itself, leaving final disposition of the complaint to a single judge"); 17A Fed. Prac. & Proc. Juris. § 4235 (3d ed.) ("It has always been clear that the single judge must decide in the first instance whether a case is one in which three judges are required although that question can be reconsidered by the three-judge court after it is convened and it can dissolve itself and return the case to the single judge if it does not think a three-judge court is required by statute." (footnote omitted)).

In *Haynes v. Dallas County Junior College District*, for example, the three-judge district court concluded that, in the face of a substantial standing question, the "appropriate" course was "that the three-judge court be dissolved and that the issues be decided by the district judge to whom the cause was originally assigned." 386 F. Supp. 208, 213 (N.D. Tex. 1974). Similarly, on finding that the claim became moot after the three-judge district court was convened, the three-judge district court in *Young v. Walker* entered an order dissolving itself and remanding to "the one district judge to whom the case was originally assigned, for his disposition," finding that "[t]his procedure [was] 'the most appropriate course.'" 435 F. Supp. 1089, 1095 (M.D. Fla. 1977) (quoting *Rosado v. Wyman*, 397 U.S. 397, 403 (1970)).

Second, dissolving the three-judge court and remitting the case to Judge Novak for resolution of the standing question is consistent with Section 2284's purpose. The "congressional policy behind the three-judge court" was "the saving of state and federal statutes from improvident doom at the hands of a single judge." *MTM, Inc. v. Baxley*, 420 U.S. 799, 804 (1975). But "[t]he three-judge procedure is an extraordinary one, imposing a heavy burden on federal courts, with attendant expense and delay." *Okla. Gas & Elec. Co. v. Okla. Packing Co.*, 292 U.S. 386, 391 (1934); see also *Bradley v. Sch. Bd. of City of Richmond, Va.*, 324 F. Supp. 396, 398 (E.D. Va.

1971). Because of the "serious drain upon the federal judicial system" imposed by the three-judge court, *Phillips v. United States*, 312 U.S. 246, 250 (1941), the Supreme Court has repeatedly instructed that "this procedural device [is] not to be viewed as a measure of broad social policy to be construed with great liberality, but as an enactment technical in the strict sense of the term and to be applied as such," *Kesler v. Dep't of Public Safety*, 369 U.S. 153, 156 (1962) (quotation marks omitted). Where, as here, "it becomes apparent that the plaintiff has no case for three judges, . . . their action is no longer prescribed," *Okla. Gas & Elec. Co.*, 292 U.S. at 391, and the three-judge court should dissolve itself to avoid unnecessarily incurring the costs to judicial efficiency.

The Fourth Circuit remanded this case to this Court to decide one limited jurisdictional question—whether Goldman has Article III standing. For the above-stated reasons, Judge Novak should rule on this threshold jurisdictional question, as he expressly contemplated doing, and as a single-judge court would do in the normal course. Because the three-judge panel was convened before deciding this threshold jurisdictional question, it should dissolve itself and allow Judge Novak to enter a final judgment dismissing Goldman's remaining claim for lack of standing.[4]

## II.    Goldman lacks standing to bring his remaining claim

Goldman did not have standing at the time he filed his complaint, did not have standing when the 2021 election occurred, and does not have standing today. "Standing is part and parcel of the constitutional mandate that the judicial power of the United States extend only to 'cases'

---

[4] In the alternative, the three-judge court should designate Judge Novak to decide the outstanding jurisdictional questions. In any action "required to be heard and determined by a district court of three judges," a "single judge may conduct all proceedings except the trial, and enter all orders permitted by the rules of civil procedure except as provided in this subsection." 28 U.S.C. § 2284(b)(3). Judge Novak should be designated because he is the judge to whom the case was initially assigned, and is already deeply familiar with the case, including these threshold jurisdictional questions. The three-judge court could then determine whether to dissolve itself following Judge Novak's ruling on the jurisdictional questions.

and 'controversies.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting U.S. Const. art. III, § 2). To establish "the 'irreducible constitutional minimum' of standing," Goldman must show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992)). This injury must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Ibid.* (quoting *Lujan*, 504 U.S. at 560 n.1). A "generalized grievance about the conduct of government" that is "plainly undifferentiated and common to all members of the public" is insufficient to confer standing. *United States v. Richardson*, 418 U.S. 166, 176–77 (1974) (quotation marks omitted).

Goldman cannot establish that he had standing either as a Virginia voter or as a potential candidate at the time of the 2021 election, nor can he establish that he has standing today.

### A.    Goldman lacks standing as a voter

Goldman has not established standing to bring his federal Equal Protection claim as a Virginia voter. Goldman's malapportionment theory proceeds as follows: The House of Delegates districts drawn in 2011 were malapportioned in 2021 if one relies on the 2020 Census data—which Virginia did not have when the 2021 electoral process began—to supply the population figures, rather than the 2010 Census data on which those districts were drawn (and partially redrawn in 2019). See, *e.g.*, SAC ¶ 87. The Court should not accept Goldman's framing of his theory even for standing purposes. See *infra* 17–19. But even accepting his theory as he presents it, Goldman lacks standing as a voter for two independent reasons. First, Goldman has neither alleged nor proven

that he voted in the 2021 election. He cannot claim the violation of a right he voluntarily declined to exercise. Second, even if he did vote, the district in which Goldman was registered to vote was not malapportioned. Goldman therefore suffered no cognizable injury to his individual right to a properly weighted vote.

The Supreme Court has long recognized that a person's right to vote is "individual and personal in nature." *Reynolds v. Sims*, 377 U.S. 533, 561 (1964). Only "voters who allege facts showing disadvantage to themselves as individuals have standing to sue" to remedy that disadvantage. *Baker v. Carr*, 369 U.S. 186, 206 (1962). A threshold inquiry, therefore, is whether Goldman is even a voter. A voter is, of course, "one who votes, not one who, although qualified to vote, does not vote." *Bd. of Supervisors of Carroll Cnty. v. Smith*, 111 U.S. 556, 565 (1884). Goldman has not even alleged, much less proved, that he voted in the election he claims violated his right to an undiluted vote. See Notice of Additional Facts Relevant to Standing ("Goldman Notice") (ECF No. 72); SOF.[5] Without casting a vote in the 2021 House of Delegates election, Goldman had no vote which was allegedly diluted and his purported injury does not "actually exist." *Spokeo, Inc.*, 578 U.S. at 340. Because Goldman has not established that he voted in the election he claims violated the U.S. Constitution, he was not injured as a voter in that election.

Even assuming Goldman voted in the 2021 election, he did not suffer an injury to his right to vote. The Supreme Court has made clear that in a vote-dilution case, "th[e] injury is district specific." *Gill v. Whitford*, 138 S. Ct. 1916, 1930 (2018).[6] "Th[e] 'disadvantage to the voter as an

---

[5] Defendants repeatedly offered to stipulate that Goldman voted in the 2021 election if he agreed to provide a copy of his voter record, to which Goldman has immediate access on the Virginia Department of Elections website. He repeatedly refused to do so. Further, and notably, he does not claim that he voted in the 2021 election in his Notice of Additional Facts Relevant to Standing (ECF No. 72).

[6] Although *Gill* was a partisan-gerrymandering case, its analysis controls this case because the Court expressly held that the injury in partisan-gerrymandering cases is the same sort of vote-

individual' . . . arises from the particular composition of the voter's own district, which causes his vote . . . to carry less weight than it would carry in another, hypothetical district." *Id.* at 1930–31 (cleaned up) (quoting *Baker*, 369 U.S. at 206). Thus, "a voter from a district that is overpopulated and under-represented suffers an injury-in-fact," whereas "a voter who resides in an *under*populated district cannot properly allege an injury-in-fact." *Hancock Cnty. Bd. of Supervisors v. Ruhr*, 487 Fed. Appx. 189, 196 (5th Cir. 2012) (citing *Baker*, 369 U.S. at 205–06).

A contrary rule would violate the fundamental principle that a "plaintiff may not invoke federal-court jurisdiction unless he can show 'a personal stake in the outcome of the controversy.'" *Gill*, 138 S. Ct. at 1929 (quoting *Baker*, 369 U.S. at 204). "[T]he requirement of such a personal stake 'ensures that courts exercise power that is judicial in nature.'" *Ibid.* (quoting *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam)). A plaintiff who resides in an underpopulated district lacks a personal stake in the controversy and instead "assert[s] only a generalized grievance against governmental conduct of which he or she does not approve." *United States v. Hays*, 515 U.S. 737, 745 (1995).

The question, then, is whether Goldman suffered a "disadvantage . . . as an individual" voter. *Gill*, 138 U.S. at 1930 (cleaned up) (quoting *Baker*, 369 U.S. at 206). To determine the answer to that question, the Court must determine whether "the particular composition of" the district in which Goldman was registered—District 68, see Ex. A, Declaration of Susan Beals in Support of Motion to Dismiss ("Beals Decl.") ¶ 4—"cause[d] his vote . . . to carry less weight than it would carry in another, hypothetical district." *Gill*, 138 U.S. at 1931. In a malapportionment case, the "hypothetical district" against which District 68 must be measured is the "ideal" district—

---

dilution injury that a voter suffers from malapportionment. *Gill*, 138 S. Ct. at 1929–30 (discussing *Baker* and *Reynolds*); see also *id.* at 1931 (reserving the question whether "other possible theories of harm" apart from vote dilution could arise in partisan-gerrymandering cases).

that is, the population of each legislative district in a perfectly proportional system, calculated by dividing the total State population by the number of legislative districts. See, *e.g.*, *Brown v. Thomson*, 462 U.S. 835, 838–39 (1983); *Karcher v. Daggett*, 462 U.S. 725, 728 (1983); *White v. Regester*, 412 U.S. 755, 761 (1973).[7]

The "ideal" district pursuant to the 2020 Census data—which, again, Virginia did not have when the electoral process began in 2021—was 86,314 people. SOF ¶ 30. The prisoner-adjusted population of District 68 as ascertained by the 2020 Census was 85,344. *Id.* ¶ 31. The district in which Goldman was registered thus contained approximately 1.12% fewer people at the time of the 2021 election than it would have had under a purely proportional system. His vote was therefore slightly *overweighted*, and he suffered no injury whatsoever to his individual right to vote in the 2021 election. See *Fairley v. Patterson*, 493 F.2d 598, 603 (5th Cir. 1974) (explaining that "injury" in a malapportionment case "results only to those persons domiciled in the under-represented voting districts"); *League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors*, 737 F.2d 155, 161–62 (2d Cir. 1984) (holding that voters in overrepresented districts, like Goldman, categorically lack standing to challenge apportionment).

Moreover, the strange nature of Goldman's claim—relying on census data obtained after the election began to assess the constitutionality of the election—reveals Goldman's lack of

---

[7] The "ideal" district is the appropriate "hypothetical district" in a malapportionment case because the Supreme Court has interpreted the Fourteenth Amendment to require "as nearly as is practicable" that "one man's vote in" an election "be worth as much as another." *Mahan v. Howell*, 410 U.S. 315, 320 (1973) (cleaned up) (quoting *Wesberry v. Sanders*, 376 U.S. 1, 7–8 (1964)). "[T]he 'as nearly as practicable' standard requires that the State make a good-faith effort to achieve precise mathematical equality" in the drawing of its state legislative districts. *Id.* at 341 (quoting *Kirkpatrick v. Preisler*, 394 U.S. 526, 530–31 (1969)); see also *Tennant v. Jefferson Cnty. Comm'n*, 567 U.S. 758, 759 (2012) (per curiam) (explaining that a State must "justify population differences between districts that could have been avoided by 'a good-faith effort to achieve absolute equality'" (quoting *Karcher*, 462 U.S. at 730)). The test for mathematical equality is the size of a hypothetical district in a perfectly proportional system. See *Brown*, 462 U.S. at 838–39.

standing even apart from *Gill*'s "hypothetical district" inquiry. Virginia's new House of Delegates district maps place Goldman's registered address in District 78. Beals Decl. ¶ 5; *see also* Goldman Notice ¶¶ 4, 22, 23, 25. According to 2020 Census data, District 78 has a population of 87,774—approximately 2.77% larger than the population of the old District 68 in which Goldman was registered at the time of the 2021 election. SOF ¶ 36. Goldman's vote in a future election—including the special election Goldman seeks as a remedy in this case—will therefore be weighted *less* than his vote in the 2021 election.[8] Goldman does not have standing to seek a remedy that would not individually benefit him. *Skolnick v. Bd. of Comm'rs of Cook Cnty.*, 435 F.2d 361, 363 (7th Cir. 1970) (concluding that a plaintiff who benefits from an alleged malapportionment lacks standing to challenge the malapportionment).

Over the course of this litigation, Goldman appears to have raised two arguments in defense of his standing. First, he argues that because the "maximum percentage variance" between two districts other than District 68 exceeded what he believes are constitutional limits, he has standing to maintain a malapportionment claim. Br. of Appellee 16–17, *Goldman v. Brink*, No. 21-2180 (4th Cir. Jan. 18, 2022). But this argument rests on "a failure to distinguish injury from remedy." *Gill*, 138 S. Ct. at 1930. The *injury* in a "one person, one vote" case is vote dilution—a violation of the "individual plaintiff's right to an equally weighted vote"—whereas the *remedy* to such an injury (if it exists at all) may be "a wholesale 'restructuring of the geographical distribution of seats in a state legislature.'" *Ibid.* (quoting *Reynolds*, 377 U.S. at 561). But "[m]alapportionment's harm is felt by individuals in overpopulated districts who actually suffer a diminution in the efficacy of their votes and their proportional voice in the legislature." *Garcia v. 2011 Legislative*

---

[8] Notably, Goldman does not challenge the newly drawn maps based on the 2020 Census data as malapportioned. Indeed, he urges this Court to hold a special election on the basis of those maps as soon as possible.

*Reapportionment Comm'n*, 559 Fed. Appx. 128, 133 (3d Cir. 2014). It is not felt by every voter in a State which may contain a malapportioned district. See *Gill*, 138 S. Ct. at 1930–31 (rejecting statewide injury theory in vote-dilution cases). Thus, "a voter who has not been injured"—like Goldman—"lacks standing to sue on behalf of individuals who are actually injured by a plan of apportionment." *Garcia*, 559 Fed. Appx. at 133; see also *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 214 (4th Cir. 2020) ("Courts have long adhered to the rule that a 'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

Second, Goldman contends that he has standing because there were districts that were even more overrepresented than District 68. See SAC ¶¶ 45, 88 (arguing that because District 3 is smaller than District 68, he has standing to sue). But one does not determine a vote-dilution injury by comparing one voter to another. Rather, *Gill* instructs courts to compare the plaintiff's *district* to a "hypothetical" *district*—which, in a malapportionment case, is the "ideal" district. 138 S. Ct. at 1931. A voter does not suffer a malapportionment injury if his district was not malapportioned when compared to the ideal district. Only the voters in districts that are actually underrepresented have standing to challenge the malapportionment. *Garcia*, 559 Fed. Appx. at 133; *Fairley*, 493 F.2d at 603; *League of Women Voters of Nassau Cnty.*, 737 F.2d at 161–62. Accordingly, courts have squarely rejected the argument that voters in "slightly over-represented [districts] . . . ha[ve] standing because they were under-represented in comparison to" even more overrepresented districts. *Wright v. Dougherty County*, 358 F.3d 1352, 1356 (11th Cir. 2004).

The foregoing demonstrates that even if one accepts the premise of Goldman's claim—that it is appropriate to use census data acquired after an election has begun to determine the

constitutionality of that election—he lacks standing because he was not underrepresented. But his premise is wrong. The 2020 Census data are not the relevant data; the 2010 Census data are.

The Supreme Court has interpreted the Fourteenth Amendment to require States to "make an honest and good faith effort to construct districts . . . as nearly of equal population as is practicable." *Brown*, 462 U.S. at 842 (quoting *Reynolds*, 377 U.S. at 577); accord *Gaffney v. Cummings*, 412 U.S. 735, 743 (1973). When they undertake that effort, they must use "the best population data available." *Kirkpatrick*, 394 U.S. at 528. "[B]ecause the census count represents 'the best population data available,'" it is "the only basis for good-faith attempts to achieve population equality." *Karcher*, 462 U.S. at 738 (quoting *Kirkpatrick*, 394 U.S. at 528); accord *Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 334 (1999).[9]

When the electoral process began in 2021, the most recent census data available to the Commonwealth were the 2010 Census data. The same was true in 2019 when this Court redrew many of the House of Delegates districts to comply with Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301. See *Bethune-Hill*, 368 F. Supp. 3d 872. The lawfulness of the maps used in the 2021 election therefore should be judged not by census data obtained 79 days after the conclusion of the primary elections and less than a month before early voting began in the general election. It should be judged by the only census data then available—the 2010 Census data. Goldman's standing therefore should be judged by the 2010 population of District 68 relative to

---

[9] Goldman contends that Virginia has a constitutional obligation to conduct redistricting "in a reapportionment year." SAC ¶ 91; see also *id.* ¶¶ 3, 122. Insofar as that argument arises from Goldman's view of the Virginia Constitution, it is irrelevant and impermissible because Goldman's claim under the Virginia Constitution has been dismissed. See *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Insofar as that argument arises from the Fourteenth Amendment, it is incorrect. Although the Equal Protection Clause requires that States "adopt some reasonable plan for periodic revision of their apportionment schemes," decennial reapportionment is not a "constitutional requisite." *Reynolds*, 377 U.S. at 583.

the 2010 ideal district population. The 2010 ideal district was 80,010. SOF ¶ 28. The 2010 population of District 68 was 79,611. *Id.* ¶ 29. Goldman therefore lacks standing because his vote was slightly overweighted in the 2011 electoral map.

Accordingly, Goldman lacks standing to bring his federal claim as a voter.

### B.      Goldman lacks standing as a candidate

Goldman lacks standing as a candidate because candidates do not suffer any cognizable injury from malapportionment. Even if candidates could suffer malapportionment injuries, Goldman suffered no such injury because the district in which he alleges he "considered" running was not malapportioned. And Goldman has not even established that he would stand for office— a necessary prerequisite for any "candidate" standing.

Goldman contends he was injured by the alleged malapportionment of Virginia's 2021 House of Delegates election because he was "denied his right to run in a constitutionally drawn 68th district in 2021," and because he was "contemplating using his core political rights guaranteed by the U.S. Constitution to run for the House of Delegates in a constitutionally drawn 68th district (or whatever the number of the district wherein he would reside)." SAC ¶ 57; see also *id.* ¶ 128. But, as discussed *supra* part II.A, the injury in a malapportionment case is *vote* dilution. Candidates for office do not share a malapportionment injury with the voters who vote for them.

"[T]he core principle of republican government [is] that the *voters* should choose their representatives, not the other way around." *Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 824 (2015) (quotation marks omitted; emphasis added). Thus, a "legislator, or potential legislator, has 'no legally cognizable interest in the composition of the district he or she represents.'" *Toth v. Chapman*, 2022 WL 821175, at *9–10 (M.D. Pa. Mar. 16, 2022) (quoting *Corman v. Torres*, 287 F. Supp. 3d 558, 569 (M.D. Pa. 2018)). A candidate suffers "no cognizable

injury" when "the boundaries of his district are adjusted by reapportionment"; although "the voters in a representative's district have an interest in being represented, a representative has no like interest in representing any particular constituency." *City of Philadelphia v. Klutznick*, 503 F. Supp. 663, 672 (E.D. Pa. 1980). Simply put, candidates have no interest affected by malapportionment that is cognizable under Article III. See *ibid.* ("It is only the voters, if anyone, who are ultimately harmed.").

That is not to say a candidate never has Article III standing. A candidate may, for example, have standing to challenge a regulation which gives his or her opponents an unlawful advantage in the competition for a particular office. See *Shays v. FEC*, 414 F.3d 76, 87 (D.C. Cir. 2005). But Goldman does not allege that the composition of District 68 gave his opponents an unlawful advantage. He instead argues that he has a right to district maps that are "constitutionally drawn." SAC ¶ 57. Goldman's interest in having the maps "constitutionally drawn" is not an interest "particularized" to him; it is, instead, a "generally available grievance about government" that he shares in common with every voter and candidate in every district. *Hollingsworth v. Perry*, 570 U.S. 693, 706–07 (2013). An alleged injury that a plaintiff "suffers in some indefinite way in common with people generally" cannot confer Article III standing. *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923).

Even if an election candidate could suffer a cognizable injury from malapportionment, Goldman did not because the district in which he was registered (and in which he alleges to have considered running) was not malapportioned in the 2021 election. As discussed above, *supra* Part II.A, Goldman's then-current district contained fewer people at the time of the 2021 election than it would have under a purely proportional system. Thus, whatever candidate-specific injury could arise from malapportionment did not arise here.

Finally, Goldman lacks standing as a candidate because he has failed to prove that he intends or intended to run as a candidate for the House of Delegates. To satisfy Article III on the basis of a proposed future candidacy, Goldman would need to show that he is "able and ready" to pursue public office. *Carney v. Adams*, 141 S. Ct. 493, 501 (2020). A "few words of general intent" are insufficient "to show an injury in fact." *Ibid.*; see also *id.* at 500 (finding an allegation that the plaintiff "would apply" for public office insufficient to establish Article III standing).

Like the plaintiff in *Carney*, Goldman attempts to establish candidate standing "without prior [House of Delegate] applications, without prior relevant conversations, without efforts to determine likely openings, without other preparations or investigations, and without any other supporting evidence." *Id.* at 501. Goldman alleges only that he was "contemplating" running for a seat in the House of Delegates in a hypothetical 2022 election, SAC ¶ 57; see also Oct. 12, 2021 Hr'g Tr. 13 (ECF No. 43) (reiterating that his intent to run "depends on the" contours of the new districts), and that between March and June of 2021, he and others attempted "to collect signatures to run in the Democratic Primary for House of Delegates in the 68th District," Goldman Notice ¶ 11; see also *id.* ¶¶ 12–15.

These allegations do not establish his standing. Goldman's merits claim is that the 2021 House of Delegates general election, not the District 68 Democratic primary, violated the Fourteenth Amendment. He has not alleged, much less proven, that he took any meaningful steps to run as a candidate in the House of Delegates general election. Indeed, he alleges that he abandoned his alleged District 68 primary efforts before the June 2021 primary in order to run in the Democratic primary for Lieutenant Governor. *Id.* ¶ 15. The only allegation related to the House of Delegates general election, therefore, is that he was "considering a run for the House of Delegates" in June and July 2021. Compl. ¶ 23 (ECF No. 1); First Amend. Compl. ¶ 23 (ECF No.

3). *Carney* forecloses any claim to standing on the basis of such "words of general intent." 141 S. Ct. at 501.

Goldman also appears to argue that he has standing to challenge the constitutionality of the 2021 election because he "is contemplating" running in a hypothetical future election. SAC ¶ 57; see also Goldman Notice ¶¶ 22–24. But Goldman's interest in running as a candidate in a future election is irrelevant to the Article III standing inquiry. A 2022 special election is Goldman's proposed remedy. Goldman must first prevail on his claim that the 2021 election violated the federal constitution before proposing any remedies. See 1 Dan B. Dobbs, *Law of Remedies* 26–27 (2d. ed. 1992) (explaining that a plaintiff must first prove a violation of a right before arguing for availability of remedy). And before he can even present his merits claim, he must establish that he has Article III standing to maintain that claim at all. See *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990) ("It is well established . . . that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue."); *Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 94–97 (1998). To demonstrate standing to maintain that claim, Goldman must prove that the challenged conduct— in this case, the 2021 election—caused him a concrete and particularized injury as a candidate. His interest in running in a hypothetical future election has nothing to do with whether he has standing to challenge the constitutionality of a previous election.

Even if running in a future election could confer standing to challenge the constitutionality of a previous election, Goldman has not alleged, much less proven, that he would run in his current district (District 78) if there were to be a House of Delegates election this November. He has alleged only that he "is contemplating" it, SAC ¶ 57, and that he "meets all the qualifications necessary to run for the House of Delegates," Goldman Notice ¶ 24. These allegations are woefully

insufficient to satisfy *Carney*'s requirement that a plaintiff whose claimed injury is the denial of the opportunity to stand for public office must prove that he is "able and ready" to seek that office. *Carney*, 141 S. Ct. at 500.[10]

### C. Even if Goldman had standing at the outset of this litigation, the Court no longer has jurisdiction over this claim because it is moot

Goldman's remaining claim also cannot proceed on any theory of standing because it is now moot. The Supreme Court has described mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)); see also *Qimonda AG v. LSI Corp.*, 857 F. Supp. 2d 570, 574 (E.D. Va. 2012) ("The question of whether the Court loses jurisdiction over a case where a plaintiff has standing at the outset, then, is properly characterized as one of mootness."). As the Supreme Court recently explained:

> At all stages of litigation, a plaintiff must maintain a personal interest in the dispute. The doctrine of standing generally assesses whether that interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings. To demonstrate standing, the plaintiff must not only establish an injury that is fairly traceable to the challenged conduct but must also seek a remedy that redresses that injury. And if in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief, the case generally is moot.

*Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021).

A case is moot, and thus no longer presents an Article III case or controversy, when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the

---

[10] Insofar as the Court concludes that Goldman's standing turns on the truth of his allegations relating to his potential candidacy for the 2021 election or some future election, the Election Officials dispute those allegations and request jurisdictional discovery.

outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). Like the doctrine of standing, the "personal stake" requirement of mootness limits the exercise of "judicial power to disputes capable of judicial resolution." *Geraghty*, 445 U.S. at 396–97.

Goldman seeks injunctive relief for the alleged dilution of his vote in the 2021 election. Specifically, he seeks an injunctive order fashioned after the one awarded in *Cosner v. Dalton*, 522 F. Supp. 350 (E.D. Va. 1981): an order that delegates elected in the November 2021 election receive only "one-year terms, such terms to expire one year after they officially begin," and that an off-cycle House of Delegates election be held during the November 2022 general election under a "constitutionally crafted reapportionment plan consistent with the 2020 U.S. Census." SAC Remedy ¶¶ D & E.[11] This relief is quintessentially injunctive. See *Nken v. Holder*, 556 U.S. 418, 428 (2009) (observing that an injunction is the court's use of its "full coercive powers" to "direct[] the conduct of a party," telling that party "what to do or not to do"); see also Black's Law Dictionary "Injunction" (11th ed., 2019) (defining an injunction as "[a] court order commanding or preventing an action").

There is a critical distinction, however, between *Cosner* and this case. In *Cosner*, the plaintiffs alleged that an *upcoming* election would violate the Constitution because it would be held on the basis of an unconstitutionally apportioned map. 522 F. Supp. at 363. Indeed, conceivably every upcoming election until the next census would repeat this constitutional violation since Virginia intended to use those maps until the next census. *Id.* at 353. The plaintiffs

---

[11] Indeed, during the October 12, 2021 hearing, Goldman specifically disclaimed that he sought to prevent the 2021 election from going forward, instead claiming his vote-dilution injury in 2021 could be remedied only through prospective relief in 2022 by halving the newly elected delegates' terms and ordering an off-cycle election. Oct. 12, 2021 Hr'g Tr. 5–6, 15 (ECF No. 43).

therefore sought an injunction to cure those impending injuries. *Id.* at 354. By contrast, Goldman's alleged injury—the dilution of his vote in the 2021 general election—took place entirely in the past and will not repeat itself, because the districts have since been reapportioned. See *supra* Factual Background part I. Goldman does not contend that Virginia's new legislative maps are unconstitutional; quite to the contrary, he is asking for an election on the basis of those maps as soon as possible. SAC ¶ 125. And he would not have standing to challenge the constitutionality of the new legislative maps in any event, given that his district has a below-ideal population. See *supra* part II.A.

Therefore, this Court "can no longer provide [him] with any effectual relief." *Uzuegbunam*, 141 S. Ct. at 796. Goldman's alleged injury occurred entirely in the past. An injunction is prospective relief; it is an improper remedy for past injuries that cannot repeat themselves. See, *e.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."); *Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018) ("But because plaintiffs here seek declaratory and injunctive relief, they must establish an ongoing or future injury in fact."). A plaintiff may not obtain injunctive relief "based only on events that occurred in the past, even if the past events amounted to a violation of federal law." *Hoepfl v. Barlow*, 906 F. Supp. 317, 320 (E.D. Va. 1995). Thus, in *City of Los Angeles v. Lyons*, the Supreme Court rejected a plaintiff's request for an injunction on the ground that his alleged injury took place entirely in the past, but permitted his damages claim for the same conduct to proceed. 461 U.S. 95, 105, 109 (1983). This is so because "a past injury, without more, is not a sufficient basis for the issuance of injunctive relief. Put another way, an injunction cannot remedy [the plaintiff's] past injury." *Hoepfl*, 906 F. Supp. at 321; see also *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447,

454 (4th Cir. 2017) (when a plaintiff seeks "prospective declaratory and injunctive relief rather than damages, the allegations in the Complaint of past injuries do not in themselves show a present case or controversy" (cleaned up)). Accordingly, because Goldman's alleged injury is the past dilution of his vote in the 2021 election held with legislative maps based on 2010 Census data—an injury which cannot repeat itself in any future election—his request for essentially injunctive relief will not alleviate any ongoing or future injury and is therefore inadequate to present a continuing case or controversy.

A case similar to this one illustrates why Goldman's claim is moot. In *Hancock County Board of Supervisors v. Ruhr*, the Fifth Circuit held that a redistricting challenge was moot and declined to invalidate the challenged election and order a new election when the election at issue had already occurred. 568 Fed. Appx. at 300–01. In that case, 2011 municipal elections were conducted using maps based on 2000 Census data because the county did not receive the 2010 Census data in time to draw new maps before the electoral process began. *Id.* at 298–99. Because the election officials' hands were tied by circumstances beyond their control and nothing suggested that the election officials would act in an allegedly unlawful manner in the future, the Court concluded that the challenge to the past election was moot and that ordering a new election would be an improper remedy. *Id.* at 300–01. Goldman similarly challenges a past election objectionable only because the Election Officials were inhibited by a federal roadblock—delayed delivery of the 2020 Census data—from conducting the election under updated maps. As with the challengers in *Hancock County Board*, Goldman seeks prospective equitable relief for a past injury and does not allege that the Election Officials will act unlawfully in the future. As such, dismissal for mootness is appropriate.

Even if Goldman's alleged past injury were amenable to injunctive relief, well-established prudential considerations foreclose that relief so close to an election. The "[Supreme] Court has repeatedly emphasized that federal courts ordinarily should not alter state election laws in the period close to an election—a principle often referred to as the *Purcell* principle." *Democratic Nat'l Comm. v. Wis. State Legis.*, 141 S. Ct. 28, 30 (2020) (Kavanaugh, J., concurring in denial of application to vacate stay) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam)). The rationale for the *Purcell* principle is straightforward: "When an election is close at hand, the rules of the road should be clear and settled . . . because running a statewide election is a complicated endeavor." *Id.* at 31. *Purcell* instructs courts to avoid "judicially created confusion," *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam), by declining to issue injunctions that would "alter state election laws in the period close to an election," *Moore v. Harper*, 142 S. Ct. 1089, 1089 (2022) (Kavanaugh, J., concurring in the denial of application for stay). The Court has frequently invoked this principle, see *Democratic Nat'l Comm.*, 141 S. Ct. at 31 (collecting cases), including twice already in 2022, see *Merrill v. Milligan*, 142 S. Ct. 879, 880 n.1 (2022) (Kavanaugh, J., concurring in grant of applications for stays); *Moore*, 142 S. Ct. at 1089.

The Virginia electoral process is well underway. Virginia candidates seeking to be elected in November 2022 were permitted to begin collecting signatures to qualify as candidates *three months ago*, on January 1, 2022. SOF ¶ 21. Candidates who wish to compete in primaries could begin filing their qualification paperwork last week and must file the required documents by April 7—just days away, *id.* ¶¶ 22–23, and in-person absentee voting—Virginia's early-voting option— for the primary election (to be held on June 21, 2022) begins on May 7, 2022, *id.* ¶¶ 24–25. The

*Purcell* principle plainly forecloses a federal injunction fundamentally altering Virginia's system of election in this period close to an election. *Moore*, 142 U.S. at 1089 (op. of Kavanaugh, J.)

### III.    Oral argument on standing is not necessary

As the case currently stands, the Election Officials respectfully submit that oral argument on standing is not necessary. The material facts are not in dispute, the legal issues are straightforward, and oral argument likely would not aid the Court in reaching its decision given the extensive briefing on standing. The Election Officials would, however, be happy to present oral argument to the extent the Court concludes that argument would aid its decision-making process. And, if the Court concludes that Goldman's standing turns on any disputed factual issue, the Election Officials ask the Court to order jurisdictional discovery and reserve the right to seek an evidentiary hearing and oral argument.

### CONCLUSION

For the foregoing reasons, this Court should dismiss Goldman's remaining claim for lack of standing.

Dated: April 1, 2022                    Respectfully submitted,

                                        ROBERT H. BRINK
                                        JOHN O'BANNON
                                        JAMILAH D. LECRUISE
                                        SUSAN BEALS

                                        By:    */s/ Andrew N. Ferguson*
                                               Andrew N. Ferguson (VSB #86583)
                                                    *Solicitor General*

Jason S. Miyares                               Erika L. Maley (VSB #97533)
     *Attorney General*                             *Principal Deputy Solicitor General*

Charles H. Slemp III (VSB #79742)              Kevin M. Gallagher (VSB #87548)
     *Chief Deputy Attorney General*           Lucas W.E. Croslow (VSB #97517)
                                                    *Deputy Solicitors General*
Steven G. Popps (VSB #80817)
     *Deputy Attorney General*                 Graham K. Bryant (VSB #90592)
                                               Annie Chiang (VSB #94703)
Joshua N. Lief (VSB #37094)                    M. Jordan Minot (VSB #95321)
     *Senior Assistant Attorney General*            *Assistant Solicitors General*


Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7704 – Telephone
(804) 371-0200 – Facsimile
AFerguson@oag.state.va.us

## <u>CERTIFICATE OF SERVICE</u>

THIS IS TO CERTIFY that on April 1, 2022, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system. A true copy was also sent, via first class mail and

electronically, to:

Paul Goldman
PO Box 17033
Richmond, VA 23226
*Pro se Plaintiff*

         <u> /s/ Andrew N. Ferguson </u>
         Andrew N. Ferguson (VSB #86583)
         *Counsel for Defendants*