# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| **Paul Goldman,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:21-CV-420** |
| | ) | |
| **Robert Brink, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)

Jason S. Miyares
*Attorney General*

Charles H. Slemp III (VSB #79742)
*Chief Deputy Attorney General*

Steven G. Popps (VSB #80817)
*Deputy Attorney General*

Joshua N. Lief (VSB #37094)
*Senior Assistant Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7704 – Telephone
(804) 371-0200 – Facsimile
AFerguson@oag.state.va.us

Andrew N. Ferguson (VSB #86583)
*Solicitor General*

Erika L. Maley (VSB #97533)
*Principal Deputy Solicitor General*

Kevin M. Gallagher (VSB #87548)
*Deputy Solicitor General*

Graham K. Bryant (VSB #90592)
Annie Chiang (VSB #94703)
*Assistant Solicitors General*

*Counsel for Defendants Robert H. Brink, John O'Bannon, Jamilah D. LeCruise, and Susan Beals*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.      Judge Novak should rule on Goldman's standing to sue ........................................ 2

    II.    Goldman lacks standing to bring his remaining claim ............................................ 3

        A.      Goldman lacks standing as a voter ................................................................ 3

        B.      Goldman lacks standing as a candidate ........................................................ 9

        C.      Goldman fails to overcome the prudential barriers to relief or otherwise demonstrate that this case is not moot ..................................... 12

    III.   Oral argument on standing is not necessary ......................................................... 14

CONCLUSION .................................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Alabama Legis. Black Caucus v. Alabama,*
  988 F. Supp. 2d 1285 (M.D. Ala. 2013) .............................................. 16

*Atlee v. Laird,*
  339 F. Supp. 1347 (E.D. Pa. 1972), aff'd 411 U.S. 911 (1973) ................................ 3

*Avery v. Midland County,*
  390 U.S. 474 (1968) ................................................................. 5

*Baker v. Carr,*
  369 U.S. 186 (1962) ........................................................... 5, 6, 7

*Bostic v. Schaefer,*
  760 F.3d 352 (4th Cir. 2014) ........................................................ 11

*Carney v. Adams,*
  141 S. Ct. 493 (2020) ............................................................... 9

*Cosner v. Dalton,*
  522 F. Supp. 350 (E.D. Va. 1981) ............................................. 8, 13, 14

*Covington v. North Carolina,*
  No. 1:15-cv-399, 2016 WL 7667298 (M.D.N.C. Nov. 29, 2016) ......................... 13

*Covington v. North Carolina,*
  270 F. Supp. 3d 881 (M.D.N.C. 2017) ............................................... 13

*Democratic Nat'l Comm. v. Wisconsin State Legis.,*
  141 S. Ct. 28 (2020) .............................................................. 12

*Evenwel v. Abbott,*
  578 U.S. 54 (2016) ............................................................... 3, 4

*Fairley v. Patterson,*
  493 F.2d 598 (5th Cir. 1974) ........................................................ 6

*Favors v. Cuomo,*
  866 F. Supp. 2d 176 (E.D.N.Y. 2011) ......................................... 9, 10, 11

*Garcia v. 2011 Legislative Reapportionment Comm'n,*
  938 F. Supp. 2d (E.D. Pa. 2013) ..................................................... 7

*Garcia v. 2011 Legislative Reapportionment Comm'n,*
  559 Fed. Appx. 128 (3d Cir. 2014) ................................................ 6, 7

*Georgia v. Ashcroft*,
539 U.S. 461 (2003) ............................................................. 15, 16

*Gill v. Whitford*,
138 S. Ct. 1916 (2018) ............................................................. 6, 7

*Goldman v. Brink*,
No. 21-2180, 2022 WL 794968 (4th Cir. Mar. 15, 2022) ...................... 2

*Gonzalez v. Automatic Emp. Credit Union*,
419 U.S. 90 (1974) ............................................................... 2, 3

*Harris v. Arizona Independent Redistricting Comm'n*,
578 U.S. 253 (2016) .............................................................. 4, 5

*Karcher v. Daggett*,
462 U.S. 725 (1983) ............................................................... 16

*Lance v. Coffman*,
549 U.S. 437 (2007) ............................................................... 8

*League of United Latin Am. Citizens v. Perry*,
548 U.S. 399 (2006) ............................................................ 15, 16

*League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors*,
737 F.2d 155 (2d Cir. 1984) ....................................................... 6

*Lovern v. Edwards*,
190 F.3d 648 (4th Cir. 1999) ..................................................... 4

*Maryland Shall Issue, Inc. v. Hogan*,
971 F.3d 199 (4th Cir. 2020) ................................................... 8, 11

*Merrill v. Milligan*,
142 S. Ct. 879 (2020) .......................................................... 12, 13

*Nken v. Holder*,
556 U.S. 418 (2009) ............................................................... 13

*North Carolina v. Covington*,
137 S. Ct. 1624 (2017) ............................................................ 13

*Purcell v. Gonzalez*,
549 U.S. 1 (2006) (per curiam) .................................................... 12

*Reynolds v. Sims*,
377 U.S. 533 (1964) ...................................................... 5, 6, 7, 15, 16

*Shapiro v. McManus*,
577 U.S. 39 (2015) .............................................................. 2, 3

*Sims v. Frink*,
208 F. Supp. 431 (M.D. Ala. 1962) .................................................. 5

*Skolnick v. Board of Comm'rs of Cook Cnty.*,
435 F.2d 361, 363 (7th Cir. 1970) ................................................. 6

*Wright v. Dougherty County*,
358 F.3d 1352 (11th Cir. 2004) .................................................. 6, 7

**Constitutional Provisions**

N.J. Const. art. IV, § 3, ¶ 4 ..................................................... 16

Va. Const. art. II, § 6-A ........................................................ 16

**Statutes**

Va. Code § 24.2-406 ............................................................. 4

Va. Code § 30-399 .............................................................. 16

**Other Authorities**

Br. of Appellant, *Baker v. Carr*, 369 U.S. 186 (1962) (No. 6), 1961 WL 101846 ........................ 5

Br. of Appellee, *Goldman v. Brink*, No. 21-2180, 2022 WL 794968 (4th Cir. Jan. 18, 2022) ...................................................................... 8

Br. of U.S. Dept. of Comm., et al., *Alabama v. U.S. Dep't of Comm.*, 46 F. Supp. 3d 1057 (M.D. Ala. 2021) (No. 3:21-cv-00211), 2021 WL 6495843 ................... 16

Chapter 2 of the Acts of Assembly (2001 Special Session I), *available at* https://tinyurl.com/4akhcxuk ............................................... 17

Compl., *Favors v. Cuomo*, 866 F. Supp. 2d 176 (E.D.N.Y. Nov. 17, 2011) (No. 11-cv-5632), 2011 WL 5830607 ............................................... 10

David Wildstein, *Census data set to arrive by September 30, keeping current legislative districts intact until 2023*, New Jersey Globe (Feb. 12, 2021), https://tinyurl.com/pmy7t5yy ................................................ 16

https://vote.elections.virginia.gov/VoterInformation/Lookup/polling ............................ 4

*In Re: Decennial Redistricting Pursuant to the Constitution of Virginia, art. II, §§ 6 to 6-A, and Virginia Code § 30-399*, Final Order Establishing Voting Districts for the Senate of Virginia, the House of Delegates of Virginia, and Virginia's Representatives to the United States House of Representatives, Sup. Ct. Va. (Dec. 28, 2021), https://www.vacourts.gov/courts/scv/districting/redistricting_final.pdf ............................................................................ 14, 16, 17

NJ Division of Elections, *2021 Election Information*, N.J. Dep't of State (Dec. 14, 2021), https://tinyurl.com/yc88ref8 ....................................................................... 16

Oral Argument, *Goldman v. Brink*, 2022 WL 794968 (No. 21-2180), *available at* https://www.ca4.uscourts.gov/OAarchive/mp3/21-2180-20220308.mp3 ............................. 2

Reply Br. of Appellant, *Goldman v. Brink*, No. 21-2180, 2022 WL 794968 (4th Cir. Feb. 8, 2022), 2022 WL 443730 ........................................................................ 8

Reply Br. of Appellant, *Baker v. Carr*, 369 U.S. 186 (1962) (No. 6), 1961 WL 101843 ................................................................................................................................. 5

Second Amend. Compl., *Harris v. Ariz. Indep. Redistricting Comm'n*, 993 F. Supp. 2d 1042 (D. Ariz. Nov. 16, 2012) (No. 2:12-cv-894), 2012 WL 5845371 ................................................................................................................................ 5

# INTRODUCTION

The Election Officials' motion to dismiss addressed the three issues that this Court directed the parties to brief: (1) whether Judge Novak or the three-judge panel should rule on standing; (2) whether Goldman has standing as a voter or as a candidate for the House of Delegates; and (3) whether oral argument on standing is necessary. See Mem. in Support of Mot. to Dismiss ("MTD Br.") (ECF No. 77). Goldman responds by arguing the merits of his malapportionment claim, and by claiming that the entire House of Delegates is illegitimate because the Supreme Court of Virginia's redistricting order declared invalid the districts on which the 2021 election was held.

Goldman's brief is long on rhetoric but falls short on standing—the only question the Fourth Circuit authorized this Court to answer. He offers no explanation of how he has suffered the sort of particularized injury-in-fact that Article III requires for any plaintiff who wants to invoke federal jurisdiction. There is a good reason for that: he suffered no injury in the 2021 election because his district was not malapportioned. And Goldman has not identified a single authority of any kind supporting Article III standing for a plaintiff who does not vote in a malapportioned district, or for a prospective candidate whose alleged injury is the size of his district. Further, Goldman's claim that he lacks a lawful representative in the House of Delegates because the Supreme Court has dissolved the House districts is preposterous. The Supreme Court merely drew the maps for the *next* election; it did nothing to the districts on which the 2021 election was held. Thus, while Goldman asks this Court to adjudicate the identity of his representative, the answer is simple: Goldman's representative is the person who was duly elected to represent the district in which he resided in 2021—as is true of all Virginians—and that will remain the case until the next election. In any event, that question is irrelevant to the only issue before this Court: whether Goldman has standing. His brief makes clear that he does not.

# ARGUMENT

## I.    Judge Novak should rule on Goldman's standing to sue

First, Judge Novak, rather than the three-judge district court, should rule on standing. Goldman marshals no response to the unbroken line of cases making clear that, if a court lacks subject matter jurisdiction over a Section 2284 claim, the district judge may "decline[] to convene a three judge court," or, if the jurisdictional defect is discovered after the court is convened, the three-judge court may "dissolve[] itself, leaving final disposition of the complaint to a single judge." *Gonzalez v. Automatic Emp. Credit Union*, 419 U.S. 90, 100 (1974); *Shapiro v. McManus*, 577 U.S. 39, 44–45 (2015); see also MTD Br. 7–8. Goldman contends that "logic" dictates that the Fourth Circuit "must believe a three-judge court should decide standing" because otherwise the Fourth Circuit "would have remanded back to Judge Novak to pick up where he left off before Defendants appealed his Order." Resp. in Opp. to Mot. to Dismiss ("Resp.") 14 (ECF No. 80). But the Fourth Circuit's remand order takes no position on which judge or judges comprise "the district court" that it ordered to "assess and resolve whether Goldman possesses Article III standing to sue." *Goldman v. Brink*, No. 21-2180, 2022 WL 794968, at *1 (4th Cir. Mar. 15, 2022).[1] And the Fourth Circuit did not remand to the district court for it to "pick up where [it] had left off." Resp. 14. The Fourth Circuit retained jurisdiction of the appeal and remanded only the threshold question of Goldman's Article III standing to maintain this suit. *Goldman*, 2022 WL 794968, at *1.

Goldman also declares without explanation that the Supreme Court's decision in *McManus* requires a three-judge court to decide the standing question because he has "raised serious issues

---

[1] In response to Goldman's contention during oral argument that the three-judge panel "are the only ones you can send [the case] back to," Judge King remarked: "That doesn't make any difference to us. If we send the case back, we send it back to the district court. Period. And they deal with it." Oral Argument at 22:14–22:42, *Goldman v. Brink*, 2022 WL 794968 (No. 21-2180), *available at* https://www.ca4.uscourts.gov/OAarchive/mp3/21-2180-20220308.mp3.

of law." Resp. 14. *McManus* held no such thing. It instead restated the longstanding distinction between "failing to raise a substantial federal question for jurisdictional purposes" and "failing to state a claim for relief on the merits." 577 U.S. at 45. Section 2284 cases that fall into the former category may be dismissed for lack of jurisdiction by a single district judge. See *Gonzalez*, 419 U.S. at 99–100; see also *Atlee v. Laird*, 339 F. Supp. 1347, 1350 (E.D. Pa. 1972) ("The decisions have uniformly held that the single district judge to whom an action is originally presented may refuse to request a three-judge court and dismiss the action if he concludes that the general requisites of federal jurisdiction are not present."), aff'd 411 U.S. 911 (1973). Goldman's failure to present any meaningful contrary arguments makes clear that the law does not require the three-judge panel to rule on this threshold issue.

## II.    Goldman lacks standing to bring his remaining claim

### A.  Goldman lacks standing as a voter

Goldman's brief purports to lay out at length a "statistical" merits case which he asserts demonstrates that Virginia's House of Delegates districts were unconstitutionally apportioned in the 2021 election. See, *e.g.*, Resp. 5–11. His merits case is wrong, see *infra* Part III, but also irrelevant at this stage of the litigation. The only question pending before this Court is whether Goldman has standing. Apart from repeatedly and erroneously claiming that the Election Officials have conceded his standing, he fails to demonstrate how he has suffered the sort of particularized injury to his right to vote that is necessary to establish Article III standing in this case.

Even if Goldman has sufficiently demonstrated at this stage of the litigation that he voted[2]

---

[2] Goldman argues that his "status as a voter" is "not a requirement" for standing, invoking Justice Thomas's concurring opinion in *Evenwel v. Abbott*, 578 U.S. 54 (2016). Resp. 23. This invocation is baffling. Justice Thomas in that opinion argued that the one-person-one vote principle—the principle upon which Goldman stakes his merits claim—lacks any constitutional

in the 2021 election,[3] he must further demonstrate that he suffered an injury to his individual right to a properly weighted vote. Goldman entirely fails to do so.

First, Goldman's "standing" framework has nothing to do with standing: it is a merits theory with no connection to Goldman's individual right to vote. The bulk of Goldman's brief is devoted to calculating the "maximum deviation or variance" between various electoral districts, see, *e.g.*, Resp. 5–11, which he describes as the "key metric in determining whether a challenged scheme is unconstitutional," *id.* at 6. The question before the Court, however, is not whether the maps used in the 2021 election were unconstitutional, but whether Goldman has *standing* to challenge those maps at all. Accordingly, *Harris v. Arizona Independent Redistricting Comm'n*, 578 U.S. 253 (2016)—which Goldman describes as "the leading U.S. Supreme Court case on permissible population deviations in a state legislative apportionment scheme," Resp. 11—has

---

foundation whatsoever, and that the Supreme Court should abjure the principle entirely. *Evenwel*, 578 U.S. at 75–76. Justice Thomas therefore does not "agree[]" with Goldman's argument. Resp. 25. On the contrary, Justice Thomas's *Evenwel* concurrence would preclude Goldman's putative Fourteenth Amendment claim irrespective of his status as a voter or a nonvoter.

[3] Goldman must prove that he voted in the election he claimed injured his right to vote. See MTD Br. 5–6. He now states in an affidavit that he voted, see Pl.'s Aff. ¶ 8 (ECF No. 81), but provides no supporting documentation. He instead argues that the Election Officials "have known, or should have known" that he voted because "this information is contained in the voter history . . . in the unique possession of the Department of Elections." Resp. 22. But the law prohibits the Department of Elections from voluntarily disclosing voter-history information except to specifically enumerated entities (including political parties); this information "shall be furnished to no one else and shall be used only for campaign and political purposes and for reporting to constituents." Va. Code § 24.2-406(A). Further, every registered voter in the Commonwealth of Virginia can immediately access his or her own registration and voter history online free of charge. See https://vote.elections.virginia.gov/VoterInformation/Lookup/polling. The Election Officials repeatedly offered to stipulate that Goldman voted if he would provide the Election Officials with supporting evidence, such as his online voter record. He refused. Goldman, not the Election Officials, bears the burden of adducing evidence to establish standing. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

nothing to do with the issue before the Court, because that case did not address standing at all.[4]

Second, Goldman repeatedly misstates and misapplies the two cases on which he chiefly relies—*Baker v. Carr*, 369 U.S. 186 (1962), and *Reynolds v. Sims*, 377 U.S. 533 (1964). Those cases held that the right to vote is "individual and personal in nature," *Reynolds*, 377 U.S. at 561, and, thus, only "voters who allege facts showing disadvantage to themselves as individuals have standing to sue" to remedy that disadvantage, *Baker*, 369 U.S. at 206. Consistent with this principle, the plaintiffs in both cases lived and voted in underrepresented districts. Compare Reply Br. of Appellant at 2, *Baker v. Carr*, 369 U.S. 186 (1962) (No. 6), 1961 WL 101843 (noting that the plaintiffs lived in Shelby, Davidson, Knox, Hamilton, and Montgomery counties), with Br. of Appellant at 9–10, *Baker v. Carr*, 369 U.S. 186 (1962) (No. 6), 1961 WL 101846 (noting that the districts comprising Shelby, Davidson, Knox, and Hamilton counties were massively underrepresented in the Tennessee legislature); compare also *Sims v. Frink*, 208 F. Supp. 431, 432 (M.D. Ala. 1962) (per curiam) (noting that plaintiffs were residents of Jefferson and Mobile counties), with *id.* at 448, app. D; 450, app. E (data demonstrating that the state House and Senate districts encompassing Jefferson and Mobile counties were orders of magnitude larger than the ideal district size). Goldman, by contrast, lives in a district that was slightly overrepresented in the 2021 elections. See MTD Br. 15–16.[5]

---

[4] Every plaintiff in *Harris* resided in an overpopulated district and therefore satisfied this basic requirement for standing in a malapportionment claim. See Second Amend. Compl. ¶¶ 3–4, *Harris v. Ariz. Indep. Redistricting Comm'n*, 993 F. Supp. 2d 1042 (D. Ariz. Nov. 16, 2012) (No. 2:12-cv-894), 2012 WL 5845371.

[5] Goldman asks this Court to accept *Avery v. Midland County*, 390 U.S. 474 (1968), as a "supplemental authority." See Mot. to Introduce Supplemental Authority ¶¶ 7, 10 (ECF No. 82). In that case, the plaintiff was a resident of one of four legislative districts in a county of about 70,000 residents. *Avery*, 390 U.S. at 476. The plaintiff's district contained 67,906 residents; the remaining three districts contained 2,094 residents combined. *Ibid.* A case in which the plaintiff resided in a district that was 388% larger than the ideal district does not help Goldman when the district in which he resided in 2021 was 1.12% smaller than the ideal district.

The Supreme Court in *Gill v. Whitford* very recently reiterated that a plaintiff lacks standing to maintain the sort of vote-dilution claim maintained by Goldman unless the "composition of the voter's own district . . . causes his vote . . . to carry less weight than it would in another, hypothetical district." 138 S. Ct. 1916, 1931 (2018); see MTD Br. 13–15. Goldman argues, however, that *Gill* is inapposite because it is "not a *Reynolds* case." Resp. 19. Although *Gill* was a partisan-gerrymandering rather than malapportionment case, the Court expressly held that the *injury* suffered by a partisan-gerrymandering plaintiff is the same as the one suffered by a malapportionment plaintiff—the dilution of an individual's vote. *Gill*, 138 S. Ct. at 1930–31. The standing analysis is therefore the same as well.

If any doubt about the import of *Gill*, *Reynolds*, and *Baker* remained, it evaporates in the face of the consensus of the courts of appeals. Each court to have considered the question has held that a voter from an overrepresented district lacks standing to challenge the malapportionment of legislative districts. See, *e.g.*, *Garcia v. 2011 Legislative Reapportionment Comm'n*, 559 Fed. Appx. 128, 133 (3d Cir. 2014) (holding that only voters in underrepresented districts have standing to challenge apportionment); *Wright v. Dougherty County*, 358 F.3d 1352, 1356 (11th Cir. 2004) (holding that a voter in a slightly overrepresented district lacked standing to challenge apportionment notwithstanding that other districts were even more overrepresented); *League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors*, 737 F.2d 155, 161–62 (2d Cir. 1984) (holding that voters in overrepresented districts categorically lack standing to challenge apportionment); *Fairley v. Patterson*, 493 F.2d 598, 603 (5th Cir. 1974) (explaining that "injury" in a malapportionment case "results only to those persons domiciled in the under-represented voting districts"); *Skolnick v. Board of Comm'rs of Cook Cnty.*, 435 F.2d 361, 363 (7th Cir. 1970) (holding that a plaintiff in a slightly overrepresented district lacked standing to challenge

apportionment). Goldman does not cite a single case decided by any court holding that a plaintiff from an overrepresented district has standing to challenge a legislative apportionment.

Goldman purports to distinguish some of these cases by pointing out that the legislatures in those cases are not identical to Virginia's House of Delegates.[6] Resp. 11–12. That is true, but irrelevant. The principle those cases establish—that voters in overrepresented districts lack standing to challenge a legislative apportionment—is plainly applicable here. And, while Goldman argues that the Election Officials "cite no case that explicitly discusses, much less supports," their theory that a plaintiff lacks standing if he "lives in a district with a population less than the ideal district population no matter how great the dilution of his vote might be due to the population difference between citizens in other parts of the state," Resp. 21, the Election Officials did exactly that in their opening brief, see MTD Br. 17 (citing *Wright*, 358 F.3d at 1356, for the proposition that courts have squarely rejected the argument that voters in "slightly over-represented [districts] . . . ha[ve] standing because they were under-represented in comparison to" even more overrepresented districts).

Third, Goldman asserts that he can show standing because the "constitutional point is to make sure we all feel equally represented." Resp. 26; see also *ibid.* ("The fact others may have more or less harm does not make my harm any less constitutionally important."). In *Gill*, the Court relied on *Baker* and *Reynolds* to reject a similar claim of "statewide injury." 138 S. Ct. at 1930. Such an asserted injury is precisely the sort of "generally available grievance about government"

---

[6] Goldman also describes the Election Officials' reliance on *Garcia v. 2011 Legislative Reapportionment Comm'n*, 938 F. Supp. 2d 542 (E.D. Pa. 2013), as "baffling." Resp. 18. But the Election Officials have never cited that case in any brief in this litigation. Instead, the Election Officials cited the Third Circuit's opinion reviewing that decision, see MTD Br. 16–17 (citing *Garcia*, 559 Fed. Appx. 128), which held that voters in overrepresented districts, like Goldman, categorically lack standing to challenge the apportionment of a legislative map, *Garcia*, 559 Fed. Appx. at 133.

that "does not state an Article III case or controversy." *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam); see also *Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 214 (4th Cir. 2020) ("Courts have long adhered to the rule that a 'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975))).

Finally, Goldman contends that the Election Officials have been "ironically trapped" into "conced[ing]" that voters in districts "with a population at least 10% greater than the ideal district" have standing. Resp. 15–16.[7] The Election Officials have conceded no such thing. Rather, the Election Officials have argued only that *Goldman* lacks standing because the district in which he was registered to vote in 2021 was overrepresented; they have raised no arguments about any other voter in any other district. Goldman therefore suffered no cognizable injury to his individual right to a properly weighted vote. MTD Br. 13–16. Goldman's brief never meaningfully addresses this argument.[8]

---

[7] This putative "concession"—and others Goldman erroneously claims the Election Officials have made, see, *e.g.*, Resp. 27 ("Defendant conceded that Plaintiff . . . suffered a population deviation double the 10% marker in *Harris*, and roughly equal to what *Cosner* declared to be facially unconstitutional."); *ibid.* ("According to Defendants, whatever constitutional harm Plaintiff may have suffered, indeed the nearly 1 million Virginians they concede were harmed have suffered, has been magically erased forever . . . .")—appear to arise from Goldman's misunderstanding of a footnote in a Fourth Circuit brief where the Election Officials argued that even assuming *arguendo* that Goldman's flawed standing theory were correct, his arguments failed under his own theory, see Reply Br. of Appellant at 9 n.2, *Goldman v. Brink*, No. 21-2180, 2022 WL 794968 (4th Cir. Feb. 8, 2022), 2022 WL 443730 (quoted at Resp. 14). But the Election Officials have clearly argued throughout that (1) Goldman's standing framework, insomuch as he has articulated one, should be rejected; and (2) Goldman has failed to establish standing under the framework articulated by the Supreme Court and courts of appeals.

[8] Goldman at times seems to argue, as he did in the Fourth Circuit, see Br. of Appellee at 16–17, *Goldman v. Brink*, No. 21-2180, 2022 WL 794968 (4th Cir. Jan. 18, 2022), that his district was malapportioned if one compares the 2020 population of District 68 to the 2010 ideal district size, see, *e.g.*, Resp. 6–8, 15. Mixing and matching data across censuses, however, is mathematically incoherent. The purpose of the "ideal" district is to determine whether the actual

## B. Goldman lacks standing as a candidate

Goldman's brief discussion of candidate standing, see Resp. 24, wholly fails to address any of the cases holding that candidates categorically do not suffer any cognizable injury from malapportionment, see MTD Br. 19–21. Nor does he address the Election Officials' argument that even if candidates could suffer malapportionment injuries, Goldman suffered none because District 68 was not malapportioned during the 2021 election. *Id.* at 20. Instead, Goldman cites a single out-of-circuit district court case to support his argument that his desire to run as a candidate in a hypothetical 2022 election confers on him candidate standing to challenge the constitutionality of the 2021 election. See Resp. 24 (citing *Favors v. Cuomo*, 866 F. Supp. 2d 176, 187 (E.D.N.Y. 2012)).

This argument fails for three reasons. First, Goldman has not explained how his alleged desire to run in a hypothetical 2022 election gives him standing to challenge the constitutionality of the 2021 election. For the reasons stated in the Election Officials' opening brief, a desire to run on one set of legislative maps in the future does not confer on a plaintiff standing to challenge the constitutionality of different maps used in a previous election. MTD Br. 22. Second, even if it could, Goldman has wholly failed to prove that he is "able and ready" to seek any office in a hypothetical 2022 election. *Carney v. Adams*, 141 S. Ct. 493, 500 (2020). Although he states in his brief that he is "ready and willing to run in House District 78" in 2022, Resp. 24, his affidavit

---

districts are equally proportional to the whole population of the State. See MTD Br. 14–15 & n.7. The sum of all the district populations must, therefore, be equal to the total state population that was used to calculate the ideal district. But, under Goldman's theory, the sum of the parts—the 2020 district populations—can never equal the whole—the 2010 total state population—because Virginia grew nearly eight percent between 2010 and 2020. Stipulation of Facts ("SOF") ¶ 30 (ECF No. 73). Mixing and matching census data as Goldman does makes equal representation literally impossible. When determining whether an actual district is properly proportioned by comparing it to the ideal district, one must always use data from the *same* census.

does not even go that far. He testifies only that he would "meet all the qualifications to run" in such an election. Pl.'s Aff. ¶ 30.

Finally, Goldman's reliance on *Favors* is misplaced. In that case, New York failed to complete its redistricting process just a few months before the scheduled 2012 primary election—notwithstanding that the state had received the 2010 Census results a year before. See Compl. ¶¶ 59, 77–79, *Favors v. Cuomo*, 866 F. Supp. 2d 176 (E.D.N.Y. Nov. 17, 2011) (No. 11-cv-5632), 2011 WL 5830607 ("*Favors* Compl."). The plaintiffs were five voters living in underrepresented districts; one of those voters was also considering a run for state senate. See *id*. ¶¶ 14–19. They alleged that the existing state and congressional districts maps were unconstitutionally apportioned "due to the population changes reflected in the 2010 census." *Favors*, 866 F. Supp. 2d at 179. Convinced that the legislature could not draw maps in time for the looming primary elections, the plaintiffs sought a judicial order drawing new maps on the ground that the legislative delay could deprive them of constitutional representation. *Id.* at 182. The voter plaintiffs based their standing primarily on the alleged underrepresentation of their particular districts under the pre-2010 maps. *Id.* at 187 (citing *Favors* Compl. ¶¶ 108–09, 120, 122). The lone voter-candidate plaintiff further alleged that he lived near the border of two districts and did not know in which district he would be living following redistricting. *Ibid*. His injury, the voter-candidate plaintiff argued, was an inability to identify his voters or to know where to begin the campaigning process. *Ibid*; *Favors* Compl. ¶ 15.

*Favors* is inapposite in this case. First, the plaintiffs there challenged the constitutionality of a map to be used in an upcoming election; unlike Goldman, they did not argue that an interest in an upcoming election gave them standing to challenge the constitutionality of a previous election. *Favors* therefore provides no support for Goldman's theory of candidate standing.

Second, the prospective candidate plaintiff in that case did not allege a malapportionment injury like Goldman does—that is, he did not allege that his injury had anything to do with the *size* of his district. Instead, he alleged that he could not determine what his district was, or who his constituents were, and therefore could not begin campaigning. *Favors*, 866 F. Supp. 2d at 187. But Goldman has not alleged that his injury arose from uncertainty over the identity of his constituents because of uncertainty of the boundaries of his district; he has alleged only that his injury arose from the number of voters in his readily identifiable district. Second Amend. Compl. ¶¶ 57–59 (ECF No. 18). *Favors* therefore provides no support for Goldman's theory of candidate injury-in-fact.

Third, the *Favors* court did not actually rest its decision on candidate standing. All the plaintiffs in that case—including the prospective candidate—were voters, and all sought the same relief—an order redrawing the state legislative and congressional districts. "[T]he Supreme Court has made it clear that 'the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.'" *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014) (quoting *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006)). "Consequently, once it is established that at least one party has standing to bring the claim, no further inquiry is required as to another party's standing to bring that claim." *Maryland Shall Issue, Inc.*, 971 F.3d at 209. The *Favors* court thus cited only voter-standing decisions and did not separately address the standing of the plaintiff who was both a voter and prospective candidate. 866 F. Supp. 2d at 186–87. *Favors* therefore does not support Goldman's candidate standing theory.[9]

_____

[9] In any event, a single out-of-circuit district court case lacking any meaningful legal analysis in support of a candidate's standing cannot overcome the overwhelming weight of the

### C. Goldman fails to overcome the prudential barriers to relief or otherwise demonstrate that this case is not moot

Finally, Goldman has not established that the relief he seeks is available under these circumstances. He makes the conclusory assertion that his vote-dilution injury is ongoing and that it can be remedied by ordering an entirely new House of Delegates election, including moving the already-scheduled primary elections to "late summer." Resp. 25, 27. But this argument ignores the Supreme Court's repeated warning that "federal courts ordinarily should not alter state election laws in the period close to an election." *Democratic Nat'l Comm. v. Wisconsin State Legis.*, 141 S. Ct. 28, 30 (2020) (Kavanaugh, J., concurring in denial of application to vacate stay) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam)). Goldman does not even address this well-established prudential doctrine in his brief.

Goldman does not merely seek changes to an existing election. He instead asks for an entirely new election—a far more intrusive federal judicial intervention into Virginia's election laws than merely altering an existing rule. Awarding such relief would cause the sort of judicially created confusion the *Purcell* doctrine is designed to prevent. "Running elections state-wide is extraordinarily complicated and difficult," and "state and local election officials need substantial time to" make the "enormous advance preparations" to overcome the "significant logistical challenges" a statewide election presents. *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2020) (Kavanaugh, J., concurring in grant of applications for stays). This is a herculean task in the best of conditions. But "even heroic efforts" of state and local election officials "likely would not be

---

thoroughly reasoned decisions the Election Officials cited demonstrating that candidates do not have standing to challenge alleged malapportionment. See MTD Br. 19–20 (citing *Arizona State Legis. v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787 (2015); *Toth v. Chapman*, 2022 WL 821175 (M.D. Pa. Mar. 16, 2022); *City of Philadelphia v. Klutznick*, 503 F. Supp. 663 (E.D. Pa. 1980)).

enough to avoid chaos and confusion" if the Commonwealth were suddenly required to hold an unscheduled, state-wide election in just a few months. *Ibid.*

Goldman's proposed relief is also quintessentially injunctive, but an injunction is an improper remedy for past injuries that cannot repeat themselves. See MTD Br. 24–26. Rather than explain why an injunction would be appropriate to remedy alleged injuries that accrued at the time of the 2021 election, Goldman responds that he disclaimed any attempt to enjoin *the 2021 election*. Resp. 12–13. That is true, and the Election Officials have not contended otherwise. It is also a non sequitur. While Goldman disclaimed one kind of injunction, he simultaneously seeks another kind: an injunctive order for a special election fashioned after the order awarded in *Cosner v. Dalton*, 522 F. Supp. 350 (E.D. Va. 1981). Second Amend. Compl. at Remedy ¶¶ D & E; see, *e.g.*, *Nken v. Holder*, 556 U.S. 418, 428 (2009) (observing that an injunction is the court's use of its "full coercive powers" to "direct[] the conduct of a party," telling that party "what to do or not to do").[10]

Goldman contends that judicially ordered special elections are "not unusual in Virginia." Resp. 25. In support of that claim, he cites a single, 41-year-old example. See *Cosner*, 522 F. Supp. 350. Setting aside that this singular example proves just how unusual this remedy is, Goldman

---

[10] Goldman now claims that he has a "Federal Constitutional Right to a 2022 Election." Resp. 17. Such a claim is not before this Court, as a constitutional right to a special election was not raised in his complaints or elsewhere in this litigation. It is also meritless. Goldman cites no case—nor could he—establishing such a constitutional right. *Cosner* did not establish a federal constitutional right to a special election. It instead ordered a special election as an equitable remedy to address the use of unconstitutionally apportioned maps in future elections. *Cosner*, 522 F. Supp. at 363–64. In the intervening 41 years, however, the Supreme Court has curtailed the equitable power of the district courts to order special elections as remedies for unconstitutional maps—and did so in a case unanimously vacating a special-election order issued by a district court in this circuit. See *North Carolina v. Covington*, 137 S. Ct. 1624, 1625–26 (2017) (per curiam) (vacating *Covington v. North Carolina*, No. 1:15-cv-399, 2016 WL 7667298 (M.D.N.C. Nov. 29, 2016)); see also *Covington v. North Carolina*, 270 F. Supp. 3d 881, 884 (M.D.N.C. 2017) (refusing to order special election on remand from Supreme Court as a remedy for a six-year-old racial gerrymander affecting dozens of districts and millions of voters).

again fails to appreciate the crucial distinction between *Cosner* and this case. *Cosner* involved a challenge to a *future* election the plaintiffs alleged would be held using an unconstitutionally apportioned map, with the expectation that all following elections until the next census would likewise be held under the allegedly unconstitutional map. *Id.* at 353–54, 363. Here, however, the 2021 election giving rise to Goldman's vote-dilution claim has already transpired. Unlike *Cosner*, there is no chance of future elections being held using the 2011 maps because Virginia has since completed its redistricting using the 2020 Census data, and subsequent elections will proceed on new maps. See *In Re: Decennial Redistricting Pursuant to the Constitution of Virginia, art. II, §§ 6 to 6-A, and Virginia Code § 30-399*, Final Order Establishing Voting Districts for the Senate of Virginia, the House of Delegates of Virginia, and Virginia's Representatives to the United States House of Representatives, Sup. Ct. Va. (Dec. 28, 2021), https://www.vacourts.gov/courts/scv/districting/redistricting_final.pdf ("Redistricting Order"). *Cosner* is inapposite because, despite his conclusory protestations to the contrary, Goldman's asserted vote-dilution injury took place entirely in the past and could not be repeated in the future.

### III. Oral argument on standing is not necessary

The Election Officials agree with the Court that oral argument on standing is not necessary. See Mar. 21, 2022 Hr'g Tr. 23 (ECF No. 74) ("[I]t seems to me this could be decided off the papers."). None of the material facts are in dispute notwithstanding that Goldman filed two factual submissions apart from the stipulation of facts ordered by the Court (see ECF Nos. 72, 81). If, however, the Court concludes that Goldman's standing turns on any disputed factual issue, the Election Officials ask the Court to order jurisdictional discovery and reserve the right to seek an evidentiary hearing and oral argument. The Election Officials are also happy to present argument to the extent it would aid the Court's decisional process.

The merits of Goldman's claim are not before the Court, nor should they ever be because Goldman lacks Article III standing. But a word on the merits is appropriate given the serious accusations Goldman has leveled against the Election Officials and "not one but two Attorneys General and their staff." Resp. 12–13. Goldman claims oral argument is necessary because of the "emergence of the most radical gutting of the *Reynolds* principle in modern Virginia history ever proposed by the Office of the Attorney General" in which the Election Officials have "admitted the massive violation of voting rights for close to a million Virginians" and "believe they are above accountability in a federal court." *Id.* at 29; see also *id.* at 16 (accusing "the Attorney General and Defendants, sworn to ensure the integrity of our electoral process" as "fe[eling] no obligation to protect the voting rights of . . . millions harmed but whose harm they fail to recognize"). While the merits of Goldman's claim are irrelevant at this stage, Goldman's accusations can be answered quite simply: The Commonwealth of Virginia's conduct of the 2021 election did not violate the United States Constitution.

The Fourteenth Amendment does not require a state to reapportion its legislative districts before new census data are available. *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 421 (2006); *Georgia v. Ashcroft*, 539 U.S. 461, 488 n.2 (2003). Here, Virginia did not obtain census data until 79 days after Virginia's primary election, and only a few weeks before voting in the general election began. SOF ¶¶ 3, 13, 15, 19. Accordingly, it is as much a constitutional non sequitur to use the 2020 Census data to review the constitutionality of the 2021 election as it would be to use those data to review the 2019 election.[11] The 2010 Census data were the "best population

_____

[11] Goldman apparently rejects this well settled rule. He argues that "populations in growing areas are disadvantaged long before the Census is done," such that underrepresented areas "did not magically lose their equal representation rights last August only when the new Census data arrived in Richmond." Resp. 18. Under Goldman's theory, then, States must conduct redistricting between

data available" for the 2021 election, and Virginia properly used the existing districts. *Karcher v. Daggett*, 462 U.S. 725, 738 (1983). Indeed, the COVID-19 pandemic and the federal government's resulting failure to timely deliver the 2020 Census data affected 27 States with 2021 redistricting deadlines.[12] See Br. of U.S. Dept. of Comm., et al. at 18, *Alabama v. U.S. Dep't of Comm.*, 546 F. Supp. 3d 1057 (M.D. Ala. 2021) (No. 3:21-cv-00211), 2021 WL 6495843.

Goldman also claims not to know which Delegate represents him in the General Assembly. Resp. 27 ("Who, then, is Plaintiff's representative in the House of Delegates?"). The answer to this question is likewise simple: His representative is the representative of the current House District 68, who was duly elected during the 2021 House of Delegates election. The Supreme Court of Virginia did not "declare[ ]" the current districts "no-longer valid" or dissolve them, as Goldman wrongly asserts. Resp. 10. It has no power to do so. See Va. Const. art. II, § 6-A(f), (g) (defining Supreme Court's constitutional role in reapportionment process); Va. Code § 30-399 (implementing Article II, § 6-A(f), (g)). It merely instructed that the new districts would govern *future* elections. Redistricting Order 2–3; cf. *Alabama Legis. Black Caucus v. Alabama*, 988 F. Supp. 2d 1285, 1317 (M.D. Ala. 2013) (distinguishing between "the legislative districts currently

---

censuses whenever an area becomes "constitutionally disadvantaged," *ibid.*, which could require multiple rounds of redistricting between censuses on the basis of non-census population data. But the Supreme Court has rejected *precisely* this theory. *Ashcroft*, 539 U.S. at 488 n.2; *League of United Latin Am. Citizens*, 548 U.S. at 421; cf. *Reynolds*, 377 U.S. at 583. Virginia therefore had no obligation to redraw its maps before the new census data arrived.

[12] New Jersey, for example, held elections for both chambers of its legislature in November 2021. See NJ Division of Elections, *2021 Election Information*, N.J. Dep't of State (Dec. 14, 2021), https://tinyurl.com/yc88ref8. A year before the election, New Jersey adopted a constitutional amendment requiring the use of its 2011 legislative maps for the 2021 election unless the State received the 2020 Census data by February of 2021. See N.J. Const. art. IV, § 3, ¶ 4. New Jersey did not receive data by the February deadline, and it held the 2021 election on the basis of the 2011 maps. See David Wildstein, *Census data set to arrive by September 30, keeping current legislative districts intact until 2023*, New Jersey Globe (Feb. 12, 2021), https://tinyurl.com/pmy7t5yy. To the best of the Election Officials' knowledge, this provision has not been challenged as a violation of the federal Constitution.

in place, which are set to expire soon" and "the redistricting plans that have already been enacted and will be in effect for the next election"), appeal dismissed by 134 S. Ct. 694 (2013). Goldman's theory of the effect of the redistricting order would also require a new election for Virginia's Senate more than eighteen months before the next scheduled Senate election because the district maps for that chamber were also redrawn. Redistricting Order at 1–2. In fact, it would require a new election for every state legislative body for which redistricting is conducted in the middle of the legislators' terms—which includes Virginia's Senate every other decade, see, *e.g.*, Chapter 2 of the Acts of Assembly (2001 Special Session I), *available at* https://tinyurl.com/4akhcxuk—because Goldman interprets redistricting as dissolving current districts rather than setting the rules for the next election. Such a theory defies common sense as much as it defies the plain text of the redistricting order.

In any event, the only issue before this Court is whether this single plaintiff has standing to sue. He categorically does not, and oral argument is not necessary to determine *that* issue. This case should be dismissed.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Defendants' Memorandum in Support of their Motion to Dismiss the Second Amended Complaint for Lack of Jurisdiction under Federal Rule of Civil Procedure 12(b)(1), this Court should dismiss Goldman's remaining claim for lack of standing.

Dated: April 25, 2022            Respectfully submitted,

ROBERT H. BRINK
JOHN O'BANNON
JAMILAH D. LECRUISE
SUSAN BEALS

By:     */s/ Andrew N. Ferguson*
        Andrew N. Ferguson (VSB #86583)
        *Solicitor General*

Jason S. Miyares                         Erika L. Maley (VSB #97533)
*Attorney General*                         *Principal Deputy Solicitor General*

Charles H. Slemp III (VSB #79742)        Kevin M. Gallagher (VSB #87548)
*Chief Deputy Attorney General*            *Deputy Solicitor General*

Steven G. Popps (VSB #80817)             Graham K. Bryant (VSB #90592)
*Deputy Attorney General*                  Annie Chiang (VSB #94703)
                                         *Assistant Solicitors General*
Joshua N. Lief (VSB #37094)
*Senior Assistant Attorney General*        Office of the Attorney General
                                         202 North Ninth Street
                                         Richmond, Virginia 23219
                                         (804) 786-7704 – Telephone
                                         (804) 371-0200 – Facsimile
                                         AFerguson@oag.state.va.us

**CERTIFICATE OF SERVICE**

THIS IS TO CERTIFY that on April 25, 2022, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system. A true copy was also sent, via email pursuant to an

agreement between the parties, to:

Paul Goldman
PO Box 17033
Richmond, VA 23226
*Pro se Plaintiff*

                                      */s/ Andrew N. Ferguson*
                                    Andrew N. Ferguson (VSB #86583)
                                    *Counsel for Defendants*